Kevin CONWAY, Plaintiff,

v.

THE UNITED STATES, Defendant.

No. 96–786 T.

United States Court of Federal Claims.

Aug. 22, 2001.

Stuart A. Smith, Piper & Marbury, L.L.P., New York City, attorney of record for plaintiff.

William K. Drew, with whom were Assistant Attorney General Loretta C. Argrett, Mildred L. Seidman, and David Gustafson, Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

Plaintiff sues here for the refund of taxes, penalties, and interest imposed as a result of the disallowance by the Internal Revenue Service of certain partnership credits and deductions claimed in his 1982 federal tax return.

The matter is before us now on the Government's motions to dismiss (in part) for lack of jurisdiction and for summary judgment. Plaintiff opposes the jurisdictional motion and has cross-moved for summary judgment in respect to the tax refund claims presented in the suit. The issues have been fully briefed and oral argument was heard on August 15, 2001. We now decide in the Government's favor.

## FACTS

In 1982, plaintiff, a professional actor, acquired a quarter-unit interest in a limited partnership known as Stevens Recycling Associates ("Stevens" or "the partnership") for $12,500. On his federal income tax return for 1982, plaintiff reported adjusted gross income of $152,270, and, with respect to his investment in Stevens, claimed a business deduction in the amount of $9,851, an investment tax credit of $9,660, and a business energy credit of $9,660, thereby reducing his reported federal income tax liability by $24,246.

In 1989, following a partnership-level examination, the Commissioner of the Internal Revenue Service ("the Commissioner") issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for the partnership for its 1982 tax year ("the 1982 FPAA"). The 1982 FPAA determined that the partnership's investment in property qualified for the investment credit and the business energy credit should have been $0 rather than the $7,000,000 claimed. Further, the partnership's reported loss was disallowed in its entirety because "it has not been established that [the partnership] incurred a loss in a trade or business or in an activity entered into for profit or with respect to property held for the production of income."

The FPAA concluded with an advisory paragraph that read, in part, as follows:

It has been determined that the partnership has improperly taken deductions or credits based on the overvaluation of assets and based on positions taken for which substantial authority was lacking. It has also been determined that the transactions were entered into for tax motivated reasons and adjustments to the partnership items were due to negligence or intentional disregard of rules and regulations. Penalties based on the above transactions, including but not limited to Internal Revenue Code Sections 6659, 6661, 6621(c), and 6653(a)(1) & (2), are applicable at the individual partner level and will be raised in separate proceedings at the partner level following the present partnership proceedings.

On July 24, 1989, a petition for readjustment was filed on behalf of the partnership in the United States Tax Court with respect to the adjustments set forth in the 1982 FPAA. The petition, formally titled "Petition for Readjustment of Partnership Items Under Code Section 6226," was docketed as *Stevens Recycling Associates, Sam Winer, Tax Matters Partner v. Commissioner of Internal Revenue*, Docket No. 18447–89 (*"Stevens Recycling"*).

On June 6, 1994, the Tax Court entered and served an Order and Decision in *Stevens Recycling*. In addition to upholding the Commissioner's determinations, this Order and Decision vacated an earlier order in the same matter (Order of February 23, 1994) which, though it had been served on the parties, was considered procedurally defective by the court because the order lacked a requisite "Entered" date.

The Tax Court Order and Decision of June 6, 1994, upheld the adjustments to the partnership items for 1982 as follows:

| Partnership Item | As Reported | As Determined |
| --- | --- | --- |
| Interest | $ 115 | –0– |
| Advanced Minimum Profit Payment | 25,000 | –0– |
| Guaranteed Payments to Partner Expense | 25,000 | –0– |
| Rent Expense | 650,000 | –0– |
| Professional Fees | 61,625 | –0– |
| Delivery, Postage, Office, and Miscellaneous Expenses | 2,012 | –0– |
| Amortization Expense | 333 | –0– |
| Ordinary Loss | (713,855) | –0– |
| Investment in property qualified for investment credit | 7,000,000 | –0– |
| Investment in property qualified for energy credit | 7,000,000 | –0– |

Based on those adjustments to the partnership items, the Commissioner made an individual assessment of tax against plaintiff in the amount of $24,246 on August 7, 1995. Further, on various dates between August 7, 1995, and November 25, 1996, underpayment interest was assessed against plaintiff with respect to his taxable year 1982. Additionally, by notice of deficiency dated August 28, 1995, the Commissioner determined that plaintiff was liable for negligence and valuation overstatement penalties under §§ 6653(a) and 6659 of the Internal Revenue Code (26 U.S.C.).[1]

1. Unless otherwise noted, all tax code sections identified in this opinion refer to the Internal

On January 29, 1996, the Commissioner assessed negligence penalties in the amount of $39,334.92, and valuation overstatement penalties in the amount of $5,796 against plaintiff with respect to his taxable year 1982. Since that time, plaintiff has satisfied (through payments and credits) all assessments of tax and additions thereto made against him.

In February 1996, plaintiff filed an administrative claim for refund of the added tax and related assessments that he had paid. His claim was denied on April 10, 1996. Plaintiff filed his complaint in this court on December 16, 1996, challenging both the tax underpayment assessments against him and the penalties that arose from them.

## DISCUSSION

We start our discussion by noting that, under the Tax Code, partnerships function as tax-reporting entities rather than as tax-paying entities. "Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." 26 U.S.C. § 701. In its role as a tax-reporting entity, a partnership must file an information return (Form 1065) annually reporting items of income, deduction, and credit. These items of income, deduction and credit are allocated among the persons who were partners in the partnership during the taxable year, and the partners, in turn, account for their respective shares of these items in their individual income tax returns.

Until 1982, administrative and judicial proceedings regarding partnership items were conducted at the level of the individual partner. In 1982, however, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, § 402(a), 96 Stat. 324, 648–67 (codified at 26 U.S.C. §§ 6221—6233). Under TEFRA, administrative and judicial proceedings concerning items reported in the partnership return are conducted at the partnership level.

To facilitate the tax administration of a partnership at the partnership level, TEFRA calls for the designation of a "tax matters partner" for each partnership. 26 U.S.C. § 6231(a)(7). The tax matters partner ("TMP") serves as the partnership's administrative representative with respect to all matters concerning the partnership's tax return. Responsibilities of the TMP include: filing requests for administrative adjustment of items shown on the partnership's return, 26 U.S.C. § 6227(b)(1)(B); filing petitions for judicial review of final administrative adjustments to the partnership's return, 26 U.S.C. § 6226(a); agreeing to extensions of the limitations period for the assessment of a tax deficiency based on partnership items, 26 U.S.C. § 6229(b)(1)(B); and keeping partners informed of all administrative and judicial proceedings relating to the adjustment of partnership items at the partnership level. 26 U.S.C. § 6223(g). In substance, the TMP's role is that of a fiduciary who functions in a manner analogous to a class-action representative.

### A. The Finality of a Tax Court Determination When a Tax Matters Partner Purportedly Lacks Authority

■ The first of the arguments that we take up here concerns plaintiff's contention that Samuel L. Winer, the partnership's sole general partner and also the individual who served as the TMP in this case, had been constrained by court order from performing any duties in that office other than providing "administrative services" to the partnership. Plaintiff maintains that Winer exceeded the limitations of his authority by, inter alia, consenting to extensions of time within which the IRS could issue a final administrative adjustment to the partnership tax return; commencing and maintaining a partnership readjustment proceeding in the Tax Court; and entering into a stipulation with the IRS consenting to the terms of a proposed decision by the Tax Court. These actions, plaintiff further asserts, were undertaken with the Government's full awareness of the restrictions that had been placed on Winer's authority as a TMP. Accordingly, plaintiff views Winer's actions (as well as those of the IRS) not only as legally ineffective, but also as constituting a fraud upon the Tax Court. The net result, plaintiff maintains, is that the partnership items purportedly resolved by

Revenue Code of 1986.

the Tax Court remain open for reexamination as part of plaintiff's refund suit in this court.

The Government disputes plaintiff's assertions concerning the alleged limitations on Winer's authority and the IRS's knowledge of those limitations. But even were we to accept those contentions, the Government maintains, the claim is nonetheless one over which this court has no jurisdiction. That is the case, in the Government's view, because § 7422(h) of the Tax Code bars the court from considering, as part of an individual taxpayer's refund claim, those issues of tax liability that are identifiable as "partnership items." Under the Government's reading of § 7422(h), in other words, those items of income, expense, deduction and credit that were reported in the partnership's tax return and were addressed by the Commissioner at a partnership level proceeding are beyond this court's authority to consider.[2]

We agree with the Government's interpretation. Section 7422 of the Tax Code deals, in general, with the procedural requirements applicable to, and the limitations upon, civil actions for tax refund. Subsection (h) of the statute states that "[n]o action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)." Since neither of the two noted exceptions applies in this case,[3] what plaintiff faces is a statute that contains an unequivocal denial of subject matter jurisdiction to consider any part of an individual partner's refund claim that seeks, in substance, to relitigate a previously decided partnership item.

Plaintiff attempts to overcome this jurisdictional obstacle by claiming that the Tax Court proceeding was defective and that its findings as to the partnership may therefore be revisited by this court as part of plaintiff's refund claim. No authority is offered in support of this proposition, however, and the Government maintains that none exists. Indeed, the Government points out that, under TEFRA, conversion of partnership items into non-partnership items is sanctioned in only one instance: where the Commissioner has failed to provide a partner with notices of the commencement of a partnership level administrative proceeding and of the final partnership administrative adjustment resulting from such proceeding as required under § 6223. Absent such a failure of notice, however, no other statutory basis exists for the conversion plaintiff urges. The upshot is that plaintiff may not contest the substantive tax liabilities stemming from the Tax Court proceeding in this court.

Other courts that have confronted this issue have reached the same conclusion. For example, in *Kaplan v. United States*, 133 F.3d 469 (7th Cir.1998), the taxpayers contended that the TMP was disqualified from serving in that capacity because of his lack of a bona fide investment as a general partner. The result, the taxpayers argued, was that the TMP lacked authority to agree to an extension of the period for making an adjustment to the partnership's tax return, and the tax assessments resulting from the improperly extended adjustment period were thus barred by the statute of limitations.

The court rejected this argument on the ground that, while it was cast as a statute of limitations issue, the real matter at stake was a partnership tax adjustment:

> This argument cannot succeed because the underlying substantive claim concerns the propriety of the adjustments to the partnership's 1983 tax return. If the Kaplans were to succeed in their claim, it would affect the tax liability of all of [the partnership's] partners. This is precisely the type of challenge prohibited by TEFRA in light of Congress's decision

---

**2.** The term "partnership item" is defined in § 6231(a)(3) of the Tax Code as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level."

**3.** The first exception noted, § 6228(b), preserves a party's right to sue for a refund when a partner's request for an administrative adjustment has been denied; the second noted exception, § 6230(c), allows a partner to sue for a refund based upon a computational error.

that such suits are better addressed in one fell swoop at the "partnership level" than in countless suits by individual partners. *Id.* at 473. *See also Klein v. United States*, 86 F.Supp.2d 690, 695–97 (E.D.Mich.1999); *Barnes v. United States*, 97–2 U.S. Tax Cas. (CCH) ¶ 50,774 at 90,088 (M.D.Fla.1997), *aff'd mem.*, 158 F.3d 587 (11th Cir.1998); *Thomas v. United States*, 967 F.Supp. 505, 506 (N.D.Ga.1997); and *Slovacek v. United States*, 36 Fed.Cl. 250, 255 (1996).

This is not to say, however, that plaintiff is without a remedy. The procedural defects he attributes to the Tax Court proceeding can be raised before that forum. Indeed, the charge he makes—that government officials participated in a fraud upon the court—is an extremely serious accusation that should have been aired in the forum where the allegedly tainted judgment was entered. The Tax Court was fully empowered to hear such a dispute. *Abatti v. Commissioner*, 859 F.2d 115, 118 (9th Cir.1988); *Senate Realty Corp. v. Commissioner*, 511 F.2d 929, 931 n. 1 (2d Cir.1975). Moreover, even if this court could hear plaintiff's claim, it would not be appropriate for it to do so. Unless essential to the exercise of a court's own jurisdiction, interference with another court's disposition of a controversy is barred by the principle of comity among courts. *See* Restatement (Second) of Judgments § 78 (1980) ("Relief from a judgment must be obtained by means of a motion for that purpose in the court that rendered the judgment unless relief may be obtained more fully, conveniently, or appropriately by some other procedure."). Plaintiff's arguments must be raised before the Tax Court.

### B. *The Validity of a Penalty Assessment When a Tax Matters Partner Purportedly Lacks Authority*

■ Even if § 7422(h) bars this court from considering a refund claim involving tax assessments attributable to partnership items, plaintiff nonetheless argues that that section has no application to refund claims involving penalty assessments for the underpayment of

tax due to negligence and valuation overstatement.[4] Such penalties, plaintiff maintains, are imposed at the individual partner level and are therefore not "partnership adjustments" within the meaning of § 7422(h). It would follow from this—plaintiff argues— that to the extent the penalty assessments are grounded on actions taken by a TMP who was without authority to act, those assessments are invalid from the start and hence recoverable here for lack of lawfulness.

In its response to this argument, the Government does not dispute that negligence and valuation overstatement penalties are non-partnership items that are determined at the individual partner level rather than at the partnership level. Nor does the Government challenge plaintiff's right to have this court reexamine the particular facts and circumstances that prompted the Commissioner to impose the penalty assessments in his case. But, says the Government, what plaintiff may not do here is contest the validity of those penalties by challenging the legitimacy of the process by which the deficiency in the underlying tax was originally determined. The Government contends that such a challenge, if allowed, would undermine the finality of the preceding partnership-level determination that § 7422(h) was meant to insure.

In support of its position, the Government refers us to the decision in *Barnes v. United States*, 97–2 U.S. Tax Cas. (CCH) ¶ 50,774 (M.D.Fla.1997)—a tax partnership case in which the court considered, and rejected, the same argument that plaintiff raises here. There the district court observed that the negligence and valuation overstatement penalties the taxpayers were challenging were "inextricably intertwined with the tax assessment." *Id.* at 90,089. Based on that fact, the court concluded that it could not "independently decide whether a penalty arising out of the tax assessment is valid if the Court lacks jurisdiction to decide if the tax assessment was valid in the first instance." *Id.*

We agree with this view. Given the relationship between the tax deficiency and the

---

4. For the tax year in suit, 1982, section 6653 of the Tax Code authorized an addition to tax "[i]f any part of any underpayment ... is due to negligence or disregard of rules or regulations."

Similarly, section 6659 of the Code authorized an addition to tax where "an underpayment of ... tax ... is attributable to a valuation overstatement."

penalty assessments—a deficiency determination being the necessary predicate to a penalty assessment—plaintiff's argument amounts to a collateral attack upon the partnership items determined by the Tax Court. Section 7422(h)'s prohibition on the allowance of refund claims attributable to partnership items forbids such a suit. In short, plaintiff may challenge the immediate factual justification supporting the imposition of the penalty assessments, but he may not challenge the underlying tax liability that authorizes the Commissioner's consideration of penalties in the first instance.

### C. *The Timeliness of the Commissioner's Notice of Deficiency*

█ In addition to contesting the penalty assessments under the theory that they were procedurally linked to a TMP who lacked authority to act, plaintiff also contests the penalties on limitations grounds. Specifically, plaintiff claims that the notice of deficiency relating to the penalty assessments which the Commissioner issued on August 28, 1995, came more than one year after the Tax Court's decision became final and therefore is void.

Section 6229(d) of the Tax Code allows the Commissioner one year from the date the Tax Court's decision in a partnership case has become final in which to issue assessments against and notices of deficiency to the individual partners. Under §§ 7481(a) and 7483 of the Code, decisions of the Tax Court become final 90 days after the decision of the court is entered unless a notice of appeal is filed within that time. According to plaintiff, the Tax Court's decision in this matter was entered on February 23, 1994, and therefore all demands for the payment of additional tax authorized by that decision should have been forthcoming no later than May 24, 1995. The Commissioner, however, did not enter an assessment of additional tax against plaintiff until August 7, 1995, and did not issue a notice of deficiency with regard to the negligence and valuation overstatement penalties until August 28, 1995. Although plaintiff contends that both actions came too late, he now challenges only the timeliness—and hence validity—of the penalty assessments.

Our examination of this argument begins with the fact that the Tax Court issued two decisions in this case—one on February 23, 1994 (the one plaintiff sees as controlling for limitations purposes); the other on June 6, 1994. Due to what was later described as "clerical error," the first decision (the February 23rd decision) contained no date to establish when the decision was entered by the court. However, the issuance of the decision was recorded by the clerk of the court in the court's master docket with the following notation: "02/23/94 ... Decision Entered, Judge Hamblen."

On June 6, 1994, the Tax Court issued a second decision in the same matter. In this second decision—titled "Order and Decision"—the court explained:

On February 23, 1994, through inadvertent clerical error, the Court served on the parties a Decision which did not bear the requisite "Entered" date. Accordingly, it is

ORDERED that the Decision served on February 23, 1994, is vacated and set aside.

Following this introduction, the "Order and Decision" of June 6, 1994, goes on to repeat the adjustments to the partnership items of Stevens Recycling for the taxable years 1982–1985 that appeared in the earlier-issued decision, and concludes with the following: "Entered: JUN 6 1994." As before, the issuance of the decision was recorded in the court's master docket by the following entry: "06/06/94 ... Order and Decision Entered, Judge Hamblen. Dec. entered 2/23/94 is vacated."

Plaintiff, as we have said, contends that the controlling date for limitations purposes is February 23, 1994—the date of the first of the Tax Court's two decisions. Although acknowledging that this decision contained no date, plaintiff points out that the decision was served on the parties on February 23, 1994, and that the court's docket entries reflect that a decision was "entered" on that date. Plaintiff argues, therefore, that the February 23, 1994, decision was valid and enforceable, and that the Tax Court was without authority to vacate this decision and issue a second decision in the same matter. Accordingly,

plaintiff maintains that the notice of deficiency with respect to the penalty assessments should have been issued no later than one year and 90 days after February 23, 1994, *i.e.*, by May 24, 1995. Since the notice was not issued until August 28, 1995, plaintiff argues, the penalty assessment is void, and he is therefore entitled to a refund of the penalties paid.

The Government offers a several-fold response. It contends first that the relief plaintiff seeks—the grant of a refund based on the alleged untimeliness of the Commissioner's actions—is substantively equivalent to having this court set aside the Tax Court's decision of June 6, 1994, in favor of its earlier decision. The authority to provide such relief, the Government contends, is barred by the subject matter prohibition of § 7422(h), by the doctrine of res judicata, and by the terms of § 7482 of the Tax Code which gives to the United States courts of appeal exclusive jurisdiction to review decisions of the Tax Court. Alternatively, the Government argues that even if this court should find that it has jurisdiction to consider plaintiff's argument, we must uphold the decision of the Tax Court because it is correct as a matter of law.

We cannot accept the Government's principal argument. Plaintiff is not seeking to relitigate the merits of the Tax Court's determination; hence, the several defenses the Government offers to protect that determination from collateral attack are irrelevant. What plaintiff is contesting, however, is the Tax Court's post-determination decision to vacate what he claims was an "entered" and final order in favor of a later-issued decision. That action, plaintiff maintains, was void for lack of authority and, as such, should be accorded no finality by this court.

Although we do not sit in judgment of the Tax Court, the proper exercise of our own jurisdiction would permit—and perhaps even require—that we assure ourselves that the tax underpayment penalties for which a refund is being sought were lawfully imposed. On that limited basis, then, we take up the question of whether the Commissioner's notice of deficiency was grounded on an imper-missibly issued second decision by the Tax Court.

The relevant statute is 26 U.S.C. § 7459, titled "Reports and decisions." Subdivision (c) of this statute specifies the date a decision of the Tax Court shall be held to be rendered with respect to the various classes of cases within the court's jurisdiction. The statute reads in part as follows:

> (c) Date of decision.—A decision of the Tax Court (except a decision dismissing a proceeding for lack of jurisdiction) shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the Tax Court ... or in the case of an action brought under section 6226 ... the date of the court's order entering the decision. If the Tax Court dismisses a proceeding for reasons other than lack of jurisdiction and is unable from the record to determine the amount of the deficiency determined by the Secretary, or if the Tax Court dismisses a proceeding for lack of jurisdiction, an order to that effect shall be entered in the records of the Tax Court, and the decision of the Tax Court shall be held to be rendered upon the date of such entry.

In its decision of June 6, 1994, the Tax Court explained that it was vacating its earlier-issued decision because "through inadvertent clerical error, the Court served on the parties a Decision which did not bear the requisite 'Entered' date." Although the court does not identify § 7459 as the basis for its action, it may fairly be assumed that it was this statute that prompted the court to proceed as it did. The court, in other words, evidently read § 7459 as requiring the issuance of a dated decision—one bearing an "entered" date—in order to satisfy the statute's requirement as to when a decision in a partnership proceeding under § 6226 qualifies as a "rendered" decision.

We agree with this reading of the statute. Section 7459(c) specifically states that, with respect to proceedings brought under § 6226, "[a] decision of the Tax Court ... shall be held to be rendered upon the date ... of the court's order entering the decision." Plaintiff maintains, however, that for purposes of establishing the date a decision

of the Tax Court becomes final, the controlling date is the date the decision is entered in the records of the court rather than the date shown on the court's order.

We must reject this argument: it cannot be reconciled with the words of the statute. The statute identifies when a decision of the Tax Court shall be held to be rendered. In other cases that come before the Tax Court—e.g., a deficiency determination—the rendering date is "the date that an order specifying the amount of the deficiency is entered in the records of the Tax Court." Similarly, where the court dismisses a proceeding, either because it is unable to ascertain the amount of the Secretary's deficiency determination or because it lacks jurisdiction over the matter, the rendering date is again defined as the date when the court's order is "entered in the records of the Tax Court." In the case of a proceeding under § 6226, however, the rendering date is identified as "the date of the court's order entering the decision." Thus, the statute distinguishes between cases arising under the court's general deficiency-determination jurisdiction and cases involving partnership proceedings under § 6226. With respect to the former, a decision is deemed rendered when the court's order is entered in the records of the court; as to the latter, however, the decision is rendered on the date of the court's order entering the decision.

This is not a distinction we are at liberty to ignore. Our responsibility is to read the statute in accordance with the everyday meaning of its words and to apply the statute accordingly. "As in all cases involving statutory construction, 'our starting point must be the language employed by Congress,' ... and we assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (citation omitted). Guided by this basic instruction, we think it evident that in a § 6226 proceeding the Tax Court's issuance of an undated order would

not qualify as a "rendered" decision. Rather, such a decision would simply amount to an incomplete exercise of the court's adjudicative authority, and thus could not qualify as a final decision.

The argument that plaintiff offers here— that the finality of the Tax Court's decision is determined from the time it is entered into the court's docket—disregards the fact that, under the terms of the statute, the decision of the court in a § 6226 proceeding is identified by the date of the "court's order" entering the decision, and not by the date the decision is entered in the records of the court. The ministerial act of entering a decision in the records of the court cannot be a substitute for the rendering of a decision through the court's exercise of its decisional authority in the form of a dated court order. By its very terms, the statute negates the idea that the entry of a decision in the records of the Tax Court can serve to elevate all undated decisions of the court into "rendered" decisions.

It is important to add here that even if this court were to disagree with the Tax Court's interpretation of § 7459, that difference of opinion would not justify our characterizing the Tax Court's order of June 6, 1994, as a legal nullity and on that basis directing that the Commissioner's notice of deficiency be set aside. So long as the Tax Court had a valid basis in law for proceeding as it did, considerations of comity would compel us to respect the judgment that it entered. It is only in those situations where judicial power has been exercised without any authority that avoidance of a challenged judgment may be accomplished through collateral attack. See Johnson v. Manhattan Ry. Co., 289 U.S. 479, 495–96, 53 S.Ct. 721, 77 L.Ed. 1331 (1933) (holding that collateral attack can be successful only where and to the extent that it discloses want of power as distinguished from error in exercise of power). We do not have such a situation here. Accordingly, we conclude that the Commissioner's notice of deficiency of August 28, 1995, was timely.[5]

5. We are aware that this issue was decided differently in Carroll v. United States, 2000–2 U.S.T.C. (CCH) ¶ 50,971 at 86, 071 (Oct. 23, 2000) and in Hirshfield v. United States, 2001–2

U.S.T.C. (CCH) ¶ 50,480 at 89, 103 (May 30, 2001). In both of these cases—each involving the same partnership that is at issue here—the essential reasoning was that § 7459(c) had no

### D. *The Lawfulness of the Penalty Assessments*

The conclusion that the penalty assessments were timely does not end the matter. In addition to challenging the penalties for being untimely, plaintiff argues that they were incorrectly imposed as a matter of law. That was the case with the negligence penalty, plaintiff contends, first because he relied on competent and disinterested professional advice in making his investment decision (and could not therefore be found negligent with respect to the deductions and credits claimed on his income tax return) and second, because the Commissioner did not impose such a penalty on other similarly-situated taxpayers, thereby violating her obligation of consistency in the administration of the tax law. Additionally, as to the valuation overstatement penalty, plaintiff argues that it was wrongfully imposed since the valuation of the partnership assets was made in good faith and their subsequently determined overvaluation was not connected to the underpayment of tax. We find none of these arguments convincing.

#### i. Plaintiff's Negligence

During 1982—the tax year at issue— § 6653(a)(1) of the Tax Code authorized the Commissioner's assessment of a five-percent penalty on any underpayment of tax if any part of the underpayment "is due to negligence or intentional disregard of rules or regulations." Further, § 6653(a)(2) authorized a penalty of an additional fifty percent of the interest payable on the amount of the underpayment found to be attributable to negligence or intentional disregard of rules or regulations.

 In evaluating the correctness of a penalty assessment, courts begin with the presumption that the Commissioner's imposi-

tion of penalties is correct and the taxpayer bears the burden of proving her wrong. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). To sustain this burden, *i.e.,* to establish that he was not negligent, the taxpayer must show that he exercised that degree of care that a reasonably prudent person would be expected to exercise under similar circumstances. *Pasternak v. Commissioner,* 990 F.2d 893, 902 (6th Cir.1993).

 In the present case, plaintiff learned of the Stevens Plastic Recycling Partnership through his lawyer, David Alter. Mr. Alter, at the time in question, was a member of a law firm that provided legal services to individuals, like plaintiff, who earned their livelihood in the entertainment industry. Mr. Alter did not specifically recommend that plaintiff invest in the Stevens partnership. Rather, according to Mr. Alter's deposition, he told his clients, including plaintiff, that "I was going into this plastics investment that seemed sound to me and to other members of my firm and, if they wanted to participate, they were welcome to do so."

Plaintiff's decision to invest in the plastics recycling partnership was based on this single exchange of information. Plaintiff did not read the private offering memorandum describing the objectives of the partnership and its business and tax risks, he did not ask for or obtain any supplementary explanation from Mr. Alter concerning the investment, and he did not ask Mr. Alter what investigation he (Alter) had made into the plastics recycling business.

This lack of inquiry notwithstanding, plaintiff maintains his conduct was reasonable on the grounds that he was not a sophisticated investor and therefore was justified in basing his investment decision on the advice and

---

direct bearing on the finality of the Tax Court's decision. Rather, the dispositive consideration was whether the decision had been entered within the meaning of § 7483. Since there was no dispute that the Tax Court's undated February 1994 decision was entered on the records in the Tax Court on February 23, 1994, both courts concluded that that decision became final 90 days later, *i.e.,* on May 24, 1994, and that the Tax Court had no jurisdiction thereafter to vacate that decision. Accordingly, the Commissioner's

failure to issue notices of deficiency within the one-year period following the finality of the February decision, *i.e.,* by May 24, 1995, rendered those notices untimely.

As indicated, we see the issue differently. In our view, the differences in the statute's wording as to when a decision of the court shall be considered rendered—"the date that an order is entered in the records" versus "the date of the court's order entering the decision"—introduce a distinction that must be heeded.

recommendation of his attorney. In support of this position, plaintiff refers us to *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), a tax refund suit challenging the imposition of a late filing penalty. In *Boyle,* the taxpayer argued that his reliance on an attorney to meet a statutory deadline for the filing of the federal estate tax return constituted reasonable cause for excusing the taxpayer from the late filing penalty. Although rejecting the taxpayer's argument on the ground that "[i]t requires no special training or effort to ascertain a deadline and make sure that it is met," the Court went on to explain that "[w]hen an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice." *Id.* at 251–52, 105 S.Ct. 687. It is this last-quoted language that plaintiff sees as favorable to his position.

We do not agree. Unlike the situation the Court was addressing in *Boyle,* the plaintiff here did not rely on his attorney for advice on a matter of tax law. Rather, it was a statement regarding an expected personal investment—perhaps best described as an investment "tip"—that the attorney communicated to plaintiff. Moreover, the attorney was not plaintiff's investment advisor, and there are no facts to suggest that the attorney had any independent expertise in the plastics recycling business. Under these circumstances, plaintiff cannot successfully contend that he had taken sufficient steps to assure himself that the deductions and credits claimed on his tax return were tied to an activity that could legitimately be described as profit-directed. Clearly, some inquiry on his part was in order given that the amount of tax benefit he claimed—$24,246—was almost twice his $12,500 investment in the partnership.[6] Indeed, any reasonable person concerned with compliance with the tax law would have questioned whether this "investment" wasn't a deal too good to be true.

These significant tax benefits, coupled with the absence of any inquiry on plaintiff's part as to the nature and prospects of the business he was investing in, strongly suggest that he was focused on making an investment in tax deductions rather than in a profit-motivated enterprise. The court concludes that plaintiff negligently disregarded tax rules and regulations.

ii. Consistency in the Treatment of Similarly Situated Taxpayers

In further challenge to his negligence penalty, plaintiff argues that the Commissioner acted arbitrarily, and therefore unlawfully, by imposing a negligence penalty on him that was not imposed on other taxpayers who had made investments in plastics recycling partnerships. In support of his position, plaintiff refers us to proceedings before the Tax Court in two related cases—*Miller v. Commissioner,* No. 10382–86 and *Miller v. Commissioner,* No. 10383–86, slip op. (T.C. Dec. 22, 1988).

In each of these cases, the Commissioner entered into a stipulated judgment that relieved the taxpayer of any negligence penalties. Additionally, plaintiff points out that the Commissioner entered into so-called piggy-back agreements with 21 other taxpayers who had bound themselves to the results in *Miller,* and accordingly were also relieved of the negligence penalty. Plaintiff maintains that the Commissioner's duty of consistency required her to advise every plastics recycling investor of the adjudications in *Miller* in order to enable such taxpayers to have the opportunity to benefit from an identical adjudication.[7]

The Government responds to this argument by saying that plaintiff misperceives his status in claiming to be situated similarly

---

6. The Stevens Private Offering Memorandum projected first-year tax benefits of credits in the amount of $77,000 and deductions in the amount of $38,940 with respect to an investment of $50,000 to acquire one unit. Thus, a purchaser of one unit (assuming a 50% tax bracket) could expect to reduce his tax liability for 1982 by $96,470 ($77,000 credit plus 50% of $38,940 equals $96,470).

7. In his complaint, plaintiff also raised the contention that, in accordance with the terms of the *Miller* settlements, he was entitled to be relieved of the penalty rate of interest that the Commissioner had imposed pursuant to § 6621(c) of the Tax Code. Plaintiff did not further develop this contention in his cross-motion; hence, we treat it as waived.

to the taxpayers in the *Miller*-related actions. What plaintiff overlooks, says the Government, is that the negligence penalty conceded in *Miller* was based on a settlement offer made prior to the decision in the plastics recycling case, *Provizer v. Commissioner*, 63 T.C.M. (CCH) 2531 (1992), *aff'd mem.*, 996 F.2d 1216 (6th Cir.1993), *cert. denied*, 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 538 (1994). That decision, the Government points out, was a test case in which the Tax Court held that the equipment leasing transactions with which the partnership was involved were a sham because they lacked economic substance and were motivated by tax-avoidance considerations. In *Provizer*, the court went on to conclude that the taxpayer was liable for negligence penalties under § 6653(a), valuation overstatement penalties under § 6659(c), and interest for underpayment of tax at the increased rate specified by § 6621(c).

Based on the results in *Provizer*, the Government maintains that the Commissioner could not be required, in the name of consistency in the administration of the tax laws, to settle with taxpayers on the same terms as were offered before that decision was handed down. We agree with this position. The change in legal landscape wrought by the decision in *Provizer* precludes plaintiff from claiming that his position is the same as the position held by the pre-*Provizer* taxpayers. Clearly, it is not: the risks attendant to litigation—and the reason for pursuing a compromise in the first instance—were significantly altered in the Commissioner's favor by that decision. Thus, regardless of what position the Commissioner previously may have taken, she cannot be considered to have acted arbitrarily in adhering to the law as subsequently clarified by court decision. Plaintiff's claim to denial of equal treatment is without merit.

### iii. The Valuation Overstatement Penalty

■ The next item we address is plaintiff's challenge to the Commissioner's assessment of a valuation overstatement penalty. During the year in suit, § 6659(a) of the Tax Code provided that "if an individual ... has an underpayment of the [income] tax ... which is attributable to a valuation overstate-ment, then there shall be added to the tax" a graduated penalty. Section 6659(c) defined a valuation overstatement as occurring whenever "the value of any property, or the adjusted basis of any property, claimed on any return" is overstated by 150 percent or more.

In this case, the Commissioner, in disallowing the partnership's reported loss, determined that the loss was not shown to have been incurred in a profit-directed business or activity. The Commissioner further determined that the partnership's claimed deductions and credits were based on an overvaluation of assets—specifically, that property deemed qualified for the investment and energy credits was adjusted downward from a claimed value of $7,000,000 to $0. It was on the basis of these determinations—subsequently upheld by the Tax Court—that the Commissioner then assessed a valuation overstatement penalty against plaintiff pursuant to § 6659.

As a partner in the Stevens partnership, plaintiff is, of course, bound by the Tax Court's determination. *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 745, 1987 WL 45298 (1987). Thus, the existence of an overvaluation for purposes of § 6659 is conclusively established. But this conclusive finding notwithstanding, plaintiff contends that he is not liable for a valuation overstatement penalty. His argument is that the assessment of a penalty pursuant to § 6659 requires a direct causal relationship between the valuation overstatement and the underpayment of tax. And that relationship, he maintains, is lacking here.

Plaintiff argues that when, as here, an activity has been adjudged as having no economic substance and is thus not recognized for tax purposes, it is that determination alone that dictates the disallowance of the claimed deductions and credits, rather than any accompanying overvaluation of assets. In other words, plaintiff sees the Commissioner's characterization of the partnership as an activity lacking economic substance as a fact independent of the claimed overvaluation. Under this view, then, the underpayment of tax is not attributable to an overvaluation. To buttress the point, plaintiff adds that the investment and business energy

credits that he claimed on the basis of his partnership interest in the plastics recyclers were calculated upon a projected stream of royalty income and not upon the $7,000,000 valuation assigned to those recyclers.

We do not find this argument persuasive. The deductions and credits that plaintiff claimed were based on the grossly-inflated value assigned to the plastics recyclers. Indeed, the transaction in which he participated only made sense from an investor's standpoint because of the deductions and credits that those hyper-inflated values made possible. Absent the ability to exploit these distorted asset valuations through tax write-offs, the deal made little sense. Under these circumstances—where the overvaluation of assets and the resulting tax benefits furnish the only economic rationale for a transaction—the transaction lacks economic substance and the underpayment of tax is attributable to the overvaluation. This same conclusion has also been reached by other courts that have addressed this issue. *See, e.g., Zfass v. Commissioner,* 118 F.3d 184, 190–91 (4th Cir.1997); *Gilman v. Commissioner,* 933 F.2d 143, 151 (2d Cir.1991), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992); *Massengill v. Commissioner,* 876 F.2d 616, 619–20 (8th Cir.1989).

As an alternative argument, plaintiff contends that the Commissioner should have waived the § 6659 penalty pursuant to § 6659(e). Section 6659(e) permits waiver of the valuation overstatement penalty "on a showing by the taxpayer that there was a reasonable basis for the valuation ... claimed on the return and that such claim was made in good faith." Plaintiff contends that there was a reasonable basis for the valuation of the recyclers claimed on the tax return and, therefore, the Commissioner should have waived the valuation overstatement penalty. The Commissioner's failure to do so, plaintiff argues, was an abuse of discretion; hence, reversible error.

We discern no abuse of discretion. Plaintiff has not shown that there was any reasonable basis for the valuation claimed on his return. Nor can he claim to have acted in good faith in accepting that valuation given that he failed to undertake even the most minimal of inquiries concerning the business in which he had invested. And, as explained above, that lack of inquiry is not overcome by the fact that plaintiff based his investment decision on an attorney's tip. Absent some reasonable basis for accepting that tip as informed advice, plaintiff's reliance simply amounts to an act of blind faith, not good faith.

## CONCLUSION

For the reasons set forth in this opinion, the Government's motion to dismiss for lack of jurisdiction and motion for summary judgment are granted. Plaintiff's cross-motion is denied. The Clerk is directed to enter judgment accordingly.