**Kevin CONWAY, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 02–5013.**

United States Court of Appeals,
Federal Circuit.

April 23, 2003.

Rehearing Denied June 13, 2003.

Stuart A. Smith, of New York, NY, argued for plaintiff-appellant.

Kenneth W. Rosenberg, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Eileen J. O'Connor, Assistant Attorney General; and Richard Farber, Attorney.

Before RADER, LINN, and DYK, Circuit Judges.

DYK, Circuit Judge.

Kevin Conway ("the taxpayer") appeals the Court of Federal Claims' decision dismissing his suit for the refund of penalties and interest, holding that the Internal Revenue Service's ("IRS's") deficiency assessment was timely and rejecting the taxpayer's other contentions. *Conway v. United States*, 50 Fed. Cl. 273 (2001). We affirm.

## BACKGROUND

In 1982, the taxpayer, a professional actor, acquired a quarter-unit interest in a limited partnership known as Stevens Recycling Associates ("the partnership") for $12,500. The taxpayer did so after a conversation with David Alter, a New York lawyer who had represented the taxpayer and provided investment advice. Alter told the taxpayer that he and several other members of his law firm were planning to invest in the partnership and recommended that the taxpayer invest as well. Alter did not provide the taxpayer with the partnership's offering memorandum nor any other document relating to the partnership at the time. Although a tax opinion about the project was prepared by another New York law firm, the taxpayer did not see it and apparently did not know of its existence until after he invested. The taxpayer made no independent investigation of the partnership.

On its 1982 tax return, the partnership claimed a $7,000,000 investment in property eligible for a qualified investment credit, a $7,000,000 investment in property eligible for a business energy credit, and $713,855 in ordinary losses. On his 1982 federal tax return, the taxpayer reported adjusted gross income of $152,270 and, pursuant to his investment in the partnership, claimed a business deduction of $9,851, an investment tax credit of $9,660, and a business energy credit of $9,660.

Altogether, the taxpayer used his investment in the partnership to reduce his income tax liability by $24,246, based on his investment of $12,500.

Under the Tax Equity and Fiscal Responsibility Act of 1982, I.R.C. §§ 6221–32,[1] a tax partnership is treated as a pass-through entity. Although administrative and judicial proceedings concerning partnership items are conducted at the partnership level, I.R.C. § 6221, the partnership is merely a tax-reporting entity, and all items of income, deduction, and credit are allocated among the partners in their individual capacities, *id.* § 701. The tax matters partner designated by the partnership agreement represents the partnership in partnership-level judicial proceedings, *id.* § 6226(a), but the individual limited partners (*e.g.,* the taxpayer here) are also deemed to be parties to the proceeding, *id.* § 6226(c). The IRS uses a Notice of Final Partnership Administrative Adjustment ("FPAA") to propose audit adjustments to a tax partnership. The statute provides that issues concerning the tax liability with respect to partnership items are generally to be determined by a judicial proceeding at the partnership level. *Id.* § 6226.

In 1989 following a partnership-level examination, the IRS issued an FPAA for the partnership for the 1982 tax year. The FPAA determined that the partnership had not invested in any property that qualified for either the investment tax credit or for the business energy credit. Further, the partnership's reported loss was disallowed in its entirety because "it has not been established that [the partnership] incurred a loss in a trade or business or in an activity entered into for profit or with respect to property held for the pro-duction of income." *Conway,* 50 Fed. Cl. at 274. The FPAA explained:

> It has been determined that the partnership has improperly taken deductions or credits based on overvaluation of assets and based on positions taken for which substantial authority was lacking. It has also been determined that the transactions were entered into for tax motivated reasons and adjustments to the partnership items were due to negligence or intentional disregard of rules and regulations.

*Id.* at 275. The FPAA also advised that "[p]enalties based on the above transactions … are applicable at the individual partner level and will be raised in separate proceedings at the partner level following the present partnership proceedings." *Id.*

On July 24, 1989, the tax matters partner filed a petition for readjustment under § 6226 on behalf of the partnership in the United States Tax Court with respect to the adjustments set forth in the FPAA. The petition was entitled "Petition for Readjustment of Partnership Items Under Code Section 6226." The case was assigned docket number 18447–89.

On February 23, 1994, an opinion and judgment were signed by the presiding Tax Court judge and entered that same day on the Tax Court's docket. *Stevens Recycling Assocs. v. Comm'r,* No. 18447–89 (T.C. Feb. 23, 1994) ("First Decision"). The Tax Court upheld the FPAA in all respects. However, the Tax Court judge inadvertently failed to affix an "Entered" date to the face of the judgment as was the usual practice. (As will be discussed below, the government argues that this omission rendered the decision ineffective because of the requirements of § 7459(c).)

---

1. Unless otherwise indicated, all references are to the 1982 edition of the Internal Revenue Code.

On June 6, 1994, the Tax Court, *sua sponte*, vacated the First Decision and replaced it with *Stevens Recycling Assocs. v. Comm'r,* No. 18447–89 (T.C. June 6, 1994) ("Second Decision"). The Second Decision was substantively identical to the first except that the second decision included an "Entered" date. The Second Decision explained:

> On February 23, 1994, through inadvertent clerical error, the Court served on the parties a Decision which did not bear the requisite "Entered" date. Accordingly, it is
>
> ORDERED that the Decision served on February 23, 1994, is vacated and set aside. It is further
>
> ORDERED and DECIDED that the following statement shows the adjustments to the partnership items of Stevens Recycling Associates for the taxable years of 1982, 1983, 1984, and 1985.

*Id.* The Tax Court provided no further explanation for its decision.

Section 6229(d) established the limitations period for assessing the tax and penalties against the individual partners. Section 6229(d) provided:

> If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended—
>
> (1) for the period during which an action may be brought under section 6226 (and, if an action with respect to such administrative adjustment is

brought during such period, *until the decision of the court in such action becomes final), and*

> (2) *for 1 year thereafter.*

I.R.C. § 6229(d) (emphasis added).[2] In other words, the limitations period was one year after "the decision of the [Tax Court] bec[a]me[ ] final." A decision became "final" upon the expiration of the appeal period, *id.* § 7481(a), which was 90 days after the decision of the Tax Court was "entered," *id.* § 7483.

On August 7, 1995, the IRS made an individual assessment of tax against the taxpayer for 1982 in the amount of $24,246. On August 28, 1995, more than a year and 90 days after the First Decision but less than a year and 90 days after the Second Decision, the IRS sent the taxpayer a notice of deficiency determining that he was liable for negligence and overstatement penalties under §§ 6653(a) and 6659 of the Internal Revenue Code of 1982. Between August 7, 1995, and November 25, 1996, underpayment interest was assessed against the taxpayer. On January 29, 1996, the Commissioner assessed negligence penalties in the amount of $39,334.92 and valuation overstatement penalties in the amount of $5,796 against the taxpayer. The taxpayer paid all assessments, interest, and penalties.

The taxpayer filed a timely administrative claim for refund, which was denied on April 10, 1996. He filed a complaint in the Court of Federal Claims on December 16, 1996, claiming a refund of both the underpayment assessments and the penalties.[3]

---

**2.** Section 6229(d)(1) was amended August 5, 1997. The Taxpayer Relief Act of 1997 § 1233(a), 26 U.S.C. § 6229(d) (2000). Subsection (1) as amended provides:

> (1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with

respect to such administrative adjustment, until the decision of the court becomes final), and

**3.** The taxpayer does not challenge the timeliness of the assessment of tax in this court.

The government's contention was that by virtue of § 7459 a decision of the Tax Court could not be "entered" until it had been "rendered," and that a decision could not be "rendered" until a decision was issued bearing an "entered" date. Thus, the government concluded, the assessment was timely because a decision had not been "rendered" until the Second Decision issued bearing an "entered" date. The taxpayer made two contentions that are relevant to this appeal.[4] First, he contended that the First Decision was properly entered on February 23, 1994, and thus became final on May 24, 1995. He thus concluded that the one-year statute of limitations in § 6229(d) ran from the First Decision of the Tax Court and thus had expired on May 24, 1995, so that the notice of deficiency, issued on August 28, 1995, was untimely. Second, he contended that, even if the notice of deficiency were considered timely, the penalties were improperly imposed. He argued that he had relied in good faith on Alter's professional advice, so that the negligence penalty under § 6653(a) was improperly imposed. The taxpayer also argued that he had had good faith basis for the overvaluation, so that the Commissioner should have waived the overstatement penalty pursuant to § 6659(e), which provided that the Commissioner may waive an overstatement assessment "on a showing by the taxpayer that there was a reasonable basis for the overvaluation ... claimed on the return and that such claim was made in good faith." I.R.C. § 6659(e) (1982). The government moved for summary judgment on both the timeliness of the assessment and the propriety of the penalties. The taxpayer cross moved for summary judgment on timeliness but opposed summary judgment on the penalties.

4. The taxpayer raised various other arguments which were rejected and not appealed.

The Court of Federal Claims granted the government's motion and denied the taxpayer's. *Conway v. United States*, 50 Fed. Cl. at 273. It determined that the statute of limitations began to run not on the date the First Decision was recorded in the Tax Court's docket but on the date of the Second Decision. *Id.* at 281. It noted that § 6229(d) measured the one-year limitation on assessments against and notices of deficiency on partners from the date that the "the decision of the court becomes final." I.R.C. § 6229(d)(1). Tax Court decisions become final, according to §§ 7481(a) and 7483, 90 days after the decision of the court is "entered" unless a notice of appeal is filed. However, the Court of Federal Claims held that a decision could not be "entered" until it had been "rendered," in accordance with § 7459(c), which provided:

A decision of the Tax Court (except a decision dismissing a proceeding for lack of jurisdiction) *shall be held to be rendered* upon the date that an order specifying the amount of the deficiency is entered into the records of the Tax Court ... or *in the case of an action brought under section 6226 [the Code section under which the partnership action was brought] ... the date of the court's order entering the decision.* If the Tax Court dismisses a proceeding for reasons other than lack of jurisdiction and is unable from the record to determine the amount of the deficiency determined by the Secretary, or if the Tax Court dismisses a proceeding for lack of jurisdiction, an order to that effect shall be entered in the records of the Tax Court, and the decision of the Tax Court shall be held to be rendered upon the date of such entry.

*See Conway,* 50 Fed. Cl. at 276–79, 283–85.

I.R.C. § 7459(c) (emphases added). The Court of Federal Claims held that, while the Tax Court did not cite a source of law when it vacated the First Decision

> it may fairly be assumed that it was [§ 7459(c)] that prompted the court to proceed as it did. The [Tax C]ourt, in other words, evidently read § 7459 as requiring the issuance of a dated decision—one bearing an 'entered' date—in order to satisfy the statute's requirement as to when a decision in a partnership proceeding under § 6226 qualifies as a 'rendered' decision.

*Conway*, 50 Fed. Cl. at 280. The Court of Federal Claims agreed with this interpretation. *Id.* at 281.

The Court of Federal Claims noted that § 7459 distinguished between non-partnership deficiency determinations, for which the rendering date was "the date that an order specifying the amount of the deficiency is entered in the records of the Tax Court," and proceedings under § 6226, for which the rendering date was "the date of the court's order entering the decision." The Court of Federal Claims held that, because these two provisions used different language, they must be construed differently. *Id.* In non-partnership cases, the court noted, the date that the decision became "final" and from which the limitations period began to run, was the date the order was entered into the records of the Tax Court. In partnership cases, however, the court held that the language "the date of the court's order entering the decision" required that there be a date of entry on the order for it to be validly entered. Thus, the Court of Federal Claims concluded, the First Decision did not cause the limitations period to begin to run because it lacked an "entered" date. Only the Second Decision, by which the assessment was timely, caused the limitations period to begin. *Id.*

The Court of Federal Claims alternatively held that

> even if this court were to disagree with the Tax Court's interpretation of § 7459, that difference of opinion would not justify our characterizing the Tax Court's order of June 6, 1994, as a legal nullity and on that basis directing that the Commissioner's notice of deficiency be set aside. So long as the Tax Court had a valid basis in law for proceeding as it did, considerations of comity would compel us to respect the judgment that it entered.

*Id.*

The Court of Federal Claims further held that the penalties were lawfully assessed. The court noted that, because the reduction in his taxable income was almost twice as great as his investment in the partnership, "any reasonable person concerned with compliance with the tax law would have questioned whether this 'investment' wasn't a deal too good to be true." *Id.* at 283. The court found that the taxpayer had been negligent in taking the deductions because he had done no more than act on an "investment 'tip'" from Alter, had not read the offering memorandum or any other document associated with the partnership, and had made no independent inquiry. *Id.* at 282–83. Finally, the Court of Federal Claims held that the Commissioner acted within his discretion in assessing the overstatement penalty because the taxpayer lacked a good faith basis for the overvaluation; he had simply relied on Alter's "tip". "Absent some reasonable basis for accepting that tip as informed advice, [the taxpayer's] reliance simply amounts to an act of blind faith, not good faith," the Court of Federal Claims concluded. *Id.* at 285.

The taxpayer timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

■ This case was decided on cross motions for summary judgment, which we review without deference. *Shell Petroleum, Inc. v. United States,* 319 F.3d 1334, 1340 (Fed.Cir.2003).

### I

Section 6229(d) provided that the limitations period for the assessment of taxes after a partnership-level proceeding did not begin to run "until the decision of the [Tax Court] bec[a]me final." Section 7481(a) provided that, with exceptions not relevant here, "a decision of the Tax Court shall become final ... upon the expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time." Section 7483 provided that "[r]eview of a decision of the Tax Court shall be obtained by filing a notice of appeal ... within 90 days after the decision of the Tax Court is entered."

The parties have divergent positions. The taxpayer argues that the First Decision was final for purposes of appeal. In support of this contention, the taxpayer cites the legislative history of § 7483 and Rule 13(a) of the Federal Rules of Appellate Procedure. He points out that originally all three relevant provisions dealing with finality of Tax Court proceedings— §§ 7481(a)(1), 7483, and 7459(c)—made the "render[ing]" of the decision the relevant date for determining finality; but the amendment of Rule 13(a) of Federal Rules of Appellate Procedure made the relevant date the "entr[y]" of the Tax Court decision. Accordingly, Congress changed § 7483 to make the date "the decision of the Tax Court is entered" the relevant date for determining the appeal period. Thus, the taxpayer argues, "the date upon which a Tax Court decision is 'rendered' ceased to have any continuing significance." (Appellants' Br. at 25.) The tax-

payer also contends that the Tax Court lacked the authority to vacate the First Decision and replace it with the second because after a decision becomes final, the Tax Court cannot modify it. Accordingly, the assessment occurred more than one year after the Tax Court's decision became final and was thus untimely.

The government, on the other hand, urges that finality is to be determined by reference to § 7459(c) and that a decision of the Tax Court had not been "entered" for the purpose of assessing the limitations period in § 6229(d) until a decision had been "rendered," *i.e.,* issued with an "entered" date. Like the Court of Federal Claims, the government asserts that § 7459 determined when a Tax Court decision was validly "entered". Section 7459 provided: "A decision of the Tax Court ... shall be held to be rendered ... in the case of an action brought under section 6226 ... [on] the date of the court's order entering the decision." The government contends that the language "the date of the court's order rendering the decision" required that the order bear an "entered" date, which the First Decision did not. The First Decision therefore did not comply with the statute. The Tax Court was therefore authorized to vacate that decision and enter a new decision that complied with the statute. Only with the Second Decision did the limitations period begin to run. Thus the notice of deficiency, the government urges, was timely.

### II

We agree with the Court of Federal Claims that, even accepting the taxpayer's argument that the First Decision became a final decision on May 24, 1994, the statute of limitations had not run on the date the deficiency assessment was made. Because the validity of the First Decision was open to question; the Tax Court had the authori-

ty to vacate it and to enter a new final decision, which became the "final decision" of the Tax Court for both appeal and limitations purposes.

Issues concerning the computation of the period for review have been addressed by the Supreme Court on a number of occasions. In the leading case of *Federal Trade Commission v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 73 S.Ct. 245, 97 L.Ed. 245 (1952), the Court directly addressed the effect of a vacated decision on finality for purposes of appeal. In *Honeywell*, the Federal Trade Commission ("Commission") filed a three-count complaint against Minneapolis–Honeywell, which after an administrative proceeding resulted in a three-part order. *Id.* at 207–08, 73 S.Ct. 245. Minneapolis–Honeywell petitioned for review in the Court of Appeals and then abandoned its attack on Parts I and II of the order, making clear that it was attacking the legality only of Part III. *Id.* at 208, 73 S.Ct. 245. The Court of Appeals held that Part III of the order could not be sustained and reversed it. *Id.* As to Counts I and II, the court said that because Minneapolis–Honeywell did not "challenge" them, "we shall make no further reference to them." *Id.* The time for a petition for rehearing expired. Then the Federal Trade Commission filed a petition asking the Court of Appeals to "enter herein a decree affirming Parts I and II of the Commission's order" because Minneapolis Honeywell had not contested them. *Id.* at 209, 73 S.Ct. 245. The Court of Appeals did so in what it styled a "Final Decree." *Id.* The Commission then sought certiorari to review the adverse judgment with respect to Part III. *Id.* at 210, 73 S.Ct. 245. The issue before the Supreme Court was whether the Final Decree restarted the period in which a petition for certiorari could be filed; if it did not, then the Commission's petition was untimely. The Supreme Court held that the Final

Decree did not restart the certiorari period because all the Court of Appeals had done was clarify its previous judgment. *Id.* at 211, 73 S.Ct. 245. The Court held:

[T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

*Id.* at 211–12, 73 S.Ct. 245 (citations omitted).

*Honeywell* has been applied to extend the time of appeal when there was an ambiguity as to the legal effect of a court's order. For example, in *Scofield v. National Labor Relations Board*, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969), the court of appeals, on March 5, 1968, rendered an opinion and stated "upon presentation, an appropriate decree will be entered." *Id.* at 427, 89 S.Ct. 1154. That decision was arguably ineffective because the petitioner was given no notice of the entry of judgment, which occurred the same day. *Id.* On April 16, 1968, the court of appeals entered a "decree." *Id.* A petition for certiorari was filed more than 90 days from the opinion but within 90 days of the decree. Under the Supreme Court's decisions the opinion would have been sufficiently complete to start the period for certiorari if proper notice had been provided. *Id.* Nevertheless, the Supreme Court held that the petition was

timely filed because the petitioners "were given no notice of the entry of the judgment." *Id.* Thus, the Court reasoned, "it could not have been clear to petitioners whether there was a March 5 judgment or not." *Id.* In *Scofield,* then, the Supreme Court held that the judgment became effective for purposes of computing the time for finality only when the Court of Appeals entered a clearly valid order (*i.e.,* the decree). So too, in *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227 (3d Cir.1991), a district court entered an order that was ambiguous as to whether it was a final judgment or an order certified for interlocutory appeal. *Id.* at 1231 n. 2. Upon the request of the defendant, the district court vacated the order and replaced it with one that resolved the ambiguity. *Id.* The Third Circuit held that the time for appeal ran from the second order because the earlier "order was inadequate to inform defendant of the proper avenue of appeal, and this confusion was rectified by the later order." *Id.*

■ Applying the *Honeywell* approach, we conclude that the original decision was properly vacated and did not determine the running of the limitations period. At the time of that decision there was a "genuine ambiguity" as to whether an effective final decision had been entered because of section 7459(c), which could be read as requiring that the decision bear a specific date. The taxpayer admits that this was an open question at the time the Tax Court signed the First Decision. In vacating the original decision and entering a new decision, the Tax Court was resolving that ambiguity. Just as in *Scofield* and *Taylor,* there was a genuine ambiguity as to the legal effect of the First Decision, which the Second Decision resolved. Under *Honeywell,* the Second Decision therefore restarted the time for appeal.

## III

■ The taxpayer argues, however, that the *Honeywell* line of cases is inapplicable because the Tax Court had no authority to vacate a decision more than 90 days after it was entered. We do not agree. It is true that the Tax Court does not have the broad power to amend and grant relief from its judgments, as federal district courts do. *See* Fed.R.Civ.P. 59, 60 (2003). The cases uniformly recognize that "as a general rule, the Tax Court lacks jurisdiction to vacate a decision once it becomes final." *Davenport Recycling Assocs. v. Comm'r,* 220 F.3d 1255, 1259 (11th Cir.2000); *Ark. Oil & Gas, Inc. v. Commissioner,* 114 F.3d 795, 798 (8th Cir. 1997); *Drobny v. Comm'r,* 113 F.3d 670, 677 (7th Cir.1997); *Webbe v. Comm'r,* 902 F.2d 688, 689 (8th Cir.1990); *Billingsley v. Comm'r,* 868 F.2d 1081, 1084 (9th Cir. 1989); *Abatti v. Comm'r,* 859 F.2d 115, 117–18 (9th Cir.1988); *Senate Realty Corp. v. Comm'r,* 511 F.2d 929, 931 n. 1 (2d Cir.1975); *Lentin v. Comm'r,* 243 F.2d 907, 909 (7th Cir.1957); *Lasky v. Comm'r,* 235 F.2d 97, 98 (9th Cir.1956), *aff'd,* 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957). The basis for this rule is that the Tax Court, as an Article I court, generally lacks equitable powers. As the Ninth Circuit has explained, the rule that the Tax Court lacks jurisdiction to vacate its judgments after they became final "originated when the Tax Court was an administrative agency and lacked the equitable powers of a court, but it remains valid today because, even as an Article I court, the Tax Court's jurisdiction to grant equitable relief is strictly limited." *Abatti,* 859 F.2d at 117–18; *accord Drobny,* 113 F.3d at 677; *Webbe,* 902 F.2d at 689.

■ However, the cases recognize that there are exceptions to the general rule that the Tax Court lacks the power to

vacate its decisions after they become final. While there is some disagreement about the Tax Court's authority, *see Roberts v. Comm'r,* 175 F.3d 889, 892–93 n. 3 (reviewing cases), there is general agreement that the Tax Court has the power to vacate an earlier decision if "the decision is shown to be void or a legal nullity for lack of jurisdiction over either the subject matter or a party." *Davenport,* 220 F.3d at 1259; *Webbe,* 902 F.2d at 689 (recognizing exception); *Billingsley,* 868 F.2d at 1084–85. For example, in *Roberts,* the Tax Court issued a decision that violated an automatic stay imposed in a bankruptcy proceeding. 175 F.3d at 891. It later vacated that decision outside the 90–day period. *Id.* The Eleventh Circuit held that "actions taken in violation of the automatic stay are void and without effect" so that the Tax Court's earlier decision never became final. *Id.* at 892–93 n. 3. The court stated that the Tax Court's *"pro forma* action in vacating that decision was merely an acknowledgement that the decision itself was void *ab initio." Id.*

 We hold that the exception should extend not only to situations in which the Tax Court decision under review is ultimately held to be ineffective but also to cases in which there is a reasonable doubt as to its effectiveness. Because the validity of the Tax Court's decision was reasonably uncertain in this case, and there is no claim that the Tax Court did not act within a reasonable period of time after the original decision, the Tax Court had the power

to eliminate that ambiguity. *See Billingsley,* 868 F.2d at 1085.[5] Therefore, the Tax Court had the power to vacate the First Decision, the Tax Court's "final decision" was the Second Decision, and the deficiency assessment was timely.[6]

### IV

 Finally, the taxpayer also argues that the penalties were not properly assessed, even if the assessment were timely. "The ruling of the Commissioner of Internal Revenue enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong." *Transamerica Corp. v. United States,* 902 F.2d 1540, 1543 (Fed.Cir.1990) (citing *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933)). First, the taxpayer argues that he should not be subject to a penalty pursuant to § 6653(a)(2), which provided:

> There shall be added to the tax ... an amount equal to 50 percent of the interest payable under section 6601 ... with respect to the portion of the underpayment ... which is attributable to ... negligence or intentional disregard [of rules or regulations].

I.R.C. § 6653 (1982). He argues that he was not negligent because he relied on the advice of Alter and because a law firm had prepared a thorough analysis of the investment, which, he claims, constitutes advice from "an accountant or an attorney ... on a matter of tax law," which the Supreme Court has indicated negates a finding of

---

**5.** By analogy to Rule 60 of the Federal Rules of Civil Procedure (*see* Tax Court Rule 1(a)), the Tax Court must act within a "reasonable time."

**6.** Two federal district courts have come to the opposite conclusion with regard to the timeliness of tax assessments for this partnership, and both are on appeal to the Second Circuit. *Hirshfield v. United States,* 2001 WL 579783, at *11· (S.D.N.Y. May 30, 2001), on reconsid-

eration, 177 F.Supp.2d 220 (S.D.N.Y.2001), appeal pending, 02–6080 (2d Cir.); *Carroll v. United States,* 2000 WL 1819419, at *5 (E.D.N.Y. Oct.23, 2000), on reconsideration 198 F.Supp.2d 328 (S.D.N.Y.2001) appeal pending, Nos. 02–6083, 02–6117 (2d Cir.). We disagree with the result in these cases and note that neither case addresses the *Honeywell* line of cases.

negligence. *United States v. Boyle*, 469 U.S. 241, 251–52, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). The taxpayer submitted evidence that he had a single conversation with Alter about the investment and that Alter "told [the taxpayer] about the Stevens Recycling investment opportunity and recommended that he make the investment. Alter told [the taxpayer] that all of the lawyers at his law firm viewed it favorably and were going to invest in it." (J.A. 70.) There was a complete lack of evidence that Alter was making any such recommendation in his capacity as counsel or as investment adviser. Indeed, Alter in his own testimony in a related proceeding, when asked if he "recommend[ed]" the investment to "his clients," said, "No, I did not.... I told them I was going into it and it seemed sound, and if they were interested they could participate as well." (J.A. 233–34.) Such a conversation does not constitute "advice" from a professional "on a matter of tax law," as required by *Boyle*. Rather, it was, as the Court of Federal Claims aptly characterized it, an "investment tip," and an especially suspect one because the tax benefit was almost twice the amount of the investment, an opportunity, again in the Court of Federal Claims' apt characterization, that was "too good to be true." *Conway*, 50 Fed. Cl. at 283.[7] The taxpayer has also submitted evidence that a law firm prepared an opinion about the partnership, but he admits that he did not receive a copy of it. Nor has he presented any evidence that he made any inquiry at all into the investment. Summary judgment was, therefore, properly granted.

■ Second, the taxpayer argues that the Commissioner abused his discretion by failing to waive the overstatement pursuant to § 6659(e). Section 6659(a) provided for a penalty for "valuation overstatement" in an "amount equal to the applicable percentage of the underpayment attributable." The taxpayer concedes that he underpaid his 1982 taxes because of overvaluation. However, § 6659(e) provided that the Commissioner "may waive all or any part" of the overstatement penalty "on a showing by the taxpayer that there was a reasonable basis for the valuation or adjusted basis claimed on the return and that such claim was made in good faith." · I.R.C. § 6659(e) (1982). The taxpayer urges that he had a reasonable basis for his valuation and that he made it in good faith because of the advice from Alter and the law firm's analysis of the investment. This argument fails for the same reason as the taxpayer's argument that he was not negligent: the taxpayer did not receive or rely on professional advice or conduct his own investigation.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is

AFFIRMED.

---

**7.** The Court of Appeals cases applying *Boyle*, cited by the taxpayer, are also distinguishable. In *Durrett v. Commissioner*, 71 F.3d 515 (5th Cir.1996), the taxpayers sought and received advice from a tax accountant and the vice president for finance of the company where one of the taxpayers worked. *Id.* at 518. In *Chamberlain v. Commissioner*, 66 F.3d 729 (5th Cir.1995), the taxpayers sought advice from a tax expert who told them explicitly that there was "a good faith, supportable position" for the deductibility of their loss. *Id.* at 733. In *Mauerman v. Commissioner*, 22 F.3d 1001 (10th Cir.1994), the taxpayer relied on the advice of two attorneys, both with accounting degrees. *Id.* at 1006. In *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir.1990), the taxpayers relied on the C.P.A. who prepared their tax returns. *Id.* at 381, 383. In none of these cases was there any claim that the advice was in the nature of an "investment tip". In each case the advice was rendered in a professional capacity.

COSTS

No costs.