**Daniel L. CARROLL and Ingrid N. Carroll, Plaintiffs–Appellees–Cross–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellant–Cross–Appellee.**

**Docket Nos. 02–6083, 02–6117(XAP).**

United States Court of Appeals, Second Circuit.

Argued: Jan. 28, 2003.

Decided: Aug. 5, 2003.

David G. Ebert, Ingram Yuzek Gainen Carroll & Bertolotti, LLP, New York, NY, for Plaintiffs–Appellees–Cross–Appellants.

Kenneth W. Rosenberg, Tax Division, Department of Justice, Washington, DC (Eileen J. O'Connor, Assistant Attorney General, Richard Farber, Tax Division, Department of Justice, Alan Vinegrad, United States Attorney General for the Eastern District of New York, of counsel), for Defendant–Appellant–Cross–Appellee.

Before: OAKES, CALABRESI, and SACK, Circuit Judges.

SACK, Circuit Judge.

This case arises out of the plaintiff Daniel L. Carroll's investment in a limited partnership—Stevens Recycling Associates ("Stevens" or "Stevens partnership"). On the basis of a $16,667 investment in 1982, Plaintiffs–Appellees Daniel L. and Ingrid N. Carroll ("the Carrolls") reduced the amount of the income tax liability that they reported for that year by $32,152. After the Tax Court held in a related case in 1992 that transactions of the kind employed by the Stevens partnership were a sham, the tax matters partner of the Stevens partnership entered into a settlement with the IRS reducing the deductions and credits claimed by Stevens to zero.

This settlement, which cost the Carrolls all of their Stevens-related deductions and credits for 1982, was confirmed by an order and decision signed by the Chief Judge of the United States Tax Court that bore a date stamp indicating that it was served on February 23, 1994. At the bottom of the order and decision, after the signature of the Chief Judge, there appears the word "Entered:", but the line thereafter is blank—no entry date appears. The Tax Court vacated that decision some four months later and issued a second order and decision, identical to the first except that it included (1) an introductory section explaining the purpose of the second order and decision; (2) a new "served" date; and (3) a date stamp on the "entered" line at the foot of the decision so that it reads, "Entered: JUN 6, 1994." The IRS thereafter filed a notice of deficiency against the Carrolls within the statutory limitations period applicable to the second order and decision, but after the expiration of the statutory limitations period applicable to the first.

On September 11, 1998, having paid the taxes and penalties assessed against them and filed refund claims with the IRS, the Carrolls brought suit in the United States District Court for the Eastern District of New York contending, *inter alia*, that the notices of deficiency were untimely because the initial decision without the "Entered:" date started the statutory limitations period running. The district court (Denis R. Hurley, *Judge*) initially ruled against the Carrolls. *Carroll v. United States*, No. CV 98–5740, 1999 WL 1090814, 1999 U.S. Dist. LEXIS 17999 (E.D.N.Y. Oct.19, 1999) (*"Carroll I"*). On reconsideration, however, the court decided in the Carrolls' favor as to the untimeliness of the notices of deficiency. *Carroll v. United States*, No. CV 98–5740, 2000 WL 1819419, 2000 U.S. Dist. LEXIS 17582 (E.D.N.Y. Oct.23, 2000) (*"Carroll II"*). On further reconsideration, the court granted the IRS's motion to deny the Carrolls relief in excess of $20,000, the amount of the penalties paid by the Carrolls in the two years immediately preceding the date of their refund claim, pursuant to 26 U.S.C. § 6511(b)(2)(B). *Carroll v. United States*, 198 F.Supp.2d 328 (E.D.N.Y.[1] 2001) (*"Carroll III"*).

The IRS appeals from the entry of partial summary judgment for the Carrolls. It argues that the initial Tax Court decision without the entry date was not validly rendered under section 7459(c) and therefore did not start the statutory limitations period running. The IRS also argues that res judicata bars the district court from ruling on the matter because the matter should have been raised as an appeal from the second Tax Court decision. In a cross-appeal, the Carrolls assert that they are entitled to a full refund of the disputed penalties.

Like the district court, we conclude that the IRS's notice of deficiency was untimely and that this suit is not barred by principles of res judicata. We disagree with the district court, however, as to the amount refundable to the Carrolls, concluding that the "look-back" provision of section 6511(b)(2)(B) does not prevent the Carrolls from recovering the full amount of the penalties that they paid for 1982. We therefore affirm in part and vacate and remand in part.

## BACKGROUND

The relevant facts, which are set forth in detail in *Carroll I*, *Carroll II*, and *Carroll III*, are undisputed. We rehearse them here only insofar as we think it necessary to explain our resolution of this appeal.

In 1982, plaintiff Daniel L. Carroll paid $16,667 for one-third of a unit interest in a limited partnership known as Stevens Recycling Associates. *Carroll III*, 198 F.Supp.2d at 334–35. The Stevens partnership was one of seven substantially identical plastics recycling programs that purported to lease machines designed to grind waste polyethylene and similar material into usable plastic form. Based on this investment, on their 1982 joint federal income tax return, the Carrolls claimed a deduction for advance rentals in the amount of $13,064, an investment tax credit of $12,810, and a business energy credit of $12,810. *Id.* at 335. Their overall tax liability was reduced by $32,138. *Id.*

*The Tax Matters Partner*

Sam Winer was the promoter and tax matters partner[2] of Stevens, as well as

---

1. The Federal Supplement erroneously reports that this is a decision of United States District Court for the Southern District of New York.

2. The tax matters partner is "the partner designated to act as a liaison between the partnership and the Internal Revenue Service in administrative proceedings, and as a repre-

various similar recycling limited partnerships. *Id.* at 334–35. On August 17, 1984, the United States filed a complaint against Winer in the United States District Court for the Middle District of Florida alleging that he had organized and promoted several abusive tax shelters, including Stevens, and had made gross valuation overstatements in connection with Stevens. *Id.* at 335. After obtaining a judgment enjoining Winer from representing Stevens and its partners but failing to find another Stevens partner willing to replace him, the IRS obtained Winer's reinstatement as the tax matters partner for the limited purpose of providing administrative services for Stevens and its partners.[3] *Id.; see also Hirshfield v. United States,* No. 99 Civ. 1828, 2001 WL 579783, at *4, 2001 U.S. Dist. LEXIS 6955, at *13–*14 (S.D.N.Y. May 30, 2001) (*"Hirshfield I"*).[4]

*Events Leading to the Winer/IRS Settlement*

On June 5, 1989, the IRS issued a Notice of Final Partnership Administrative Adjustment for the Stevens partnership for the years 1982 through 1985, which significantly altered Stevens's income and deductions to the detriment of its partners.

*Carroll III,* 198 F.Supp.2d at 336. On July 24, 1989, Winer brought an action on behalf of Stevens in the United States Tax Court pursuant to 26 U.S.C. § 6226 seeking a redetermination of the adjustments against Stevens for the tax years 1982 through 1985. *Carroll III,* 198 F.Supp.2d at 336.

On March 25, 1992, in a related proceeding, the Tax Court held that the lease transactions conducted by six recycling partnerships similar to Stevens, in which Winer was also a general partner, were a sham. *Provizer v. Comm'r,* 63 T.C.M. (CCH) 2531 (1992), *aff'd,* 996 F.2d 1216 (6th Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 538 (1994); *see Hirshfield I,* 2001 WL 579783, at *5, 2001 U.S. Dist. LEXIS 6955, at *15. After the Tax Court had concluded that one of these recycling partnerships owed penalties, Winer conceded the IRS's position in the pending Stevens section 6226 action. *See id.* On November 9, 1993, the IRS moved in Tax Court for entry of a decision that Winer, as the tax matters partner for Stevens, had thus " 'entered into a settlement agreement' with the IRS." *Carroll III,* 198 F.Supp.2d at 336.[5]

sentative of the partnership in judicial proceedings." *Addington v. Comm'r,* 205 F.3d 54, 60 (2d Cir.2000); *see* 26 U.S.C. § 6231(a)(7).

3. Questions about the legitimacy of Winer's ongoing status as the tax matters partner are not relevant to this appeal.

4. *Hirshfield I* also arose from the tax treatment of the Stevens partnership. Its facts and issues overlap with those before us. In *Hirshfield I,* the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge* ) agreed with the plaintiffs' argument that the notice of deficiency was untimely, but held that it lacked jurisdiction to consider the question because partnership items were at issue. *Hirshfield I,* 2001 WL 579783, at *10–*11, 2001 U.S. Dist. LEXIS

6955, at *30–*34. In response to a motion for reconsideration, the court held that it had jurisdiction to consider the plaintiffs' claim regarding the penalties, noting that "[t]he government agrees that the jurisdictional bar was inappropriately invoked." *Hirshfield v. United States,* 177 F.Supp.2d 220, 221 (S.D.N.Y.2001) (*"Hirshfield II"*). The court also held that the plaintiffs' suit was not barred by principles of res judicata and concluded that the plaintiffs were entitled to a refund of the disputed penalties. *Id.* at 222–24. In a summary order entered on the date hereof, we affirm the judgment of the district court in *Hirshfield II.*

5. Because the IRS characterized the concession as a settlement, and the Tax Court later treated it as such, we, too, refer to it as a settlement.

*The First Tax Court Decision*

On February 17, 1994, Tax Court Special Trial Judge Norman H. Wolfe granted the IRS motion by endorsing it with the stamp: "granted." On February 23, 1994, the decision was served on the parties. Also on February 23, 1994, Tax Court Chief Judge L.W. Hamblen, Jr., signed an Order and Decision (the "first Tax Court decision" or the "first decision") resolving all of the issues relating to Stevens's income for the tax years 1982 through 1985. *Carroll II,* 2000 WL 1819419, at *1, 2000 U.S. Dist. LEXIS 17582, at *3. This decision bore no date in the space after the word "Entered:" at the bottom of the document, following Chief Judge Hamblen's signature. *Id.* The only date on the decision was a stamp on its first page: "SERVED FEB 23, 1994." *Id.* The Tax Court docket sheet reflected the entry, "DECISION ENTERED, Judge Hamblen," on the date "02/23/94," and indicated service of the decision upon all parties on the same date. *Id.*

*The Second Tax Court Decision*

On June 6, 1994, 103 days after the first decision was, according to the docket sheet, entered, Chief Judge Hamblen issued another Order and Decision in this case (the "second Tax Court decision" or the "second decision") which began by stating:

> On February 23, 1994, through inadvertent clerical error, the Court served on the parties a Decision which did not bear the requisite "Entered" date. Accordingly, it is
>
> ORDERED that the Decision served on February 23, 1994, is vacated and set aside.

*See id.,* 2000 WL 1819419, at *2, 2000 U.S. Dist. LEXIS 17582, at *3–*4 (alterations omitted). At the bottom of the order, next to the word "Entered:", the date "JUN 6 1994" was stamped. Other than the preamble quoted above, the date of service (June 6, 1994, instead of February 23, 1994), and the date stamp at the foot of the document, the second Tax Court decision was identical to the first. *See id.,* 2000 WL 1819419, at *2, 2000 U.S. Dist. LEXIS 17582, at *4. The Tax Court docket sheet, under the date "06/06/94," noted the decision as follows: "ORDER AND DECISION ENTERED, Judge Hamblen. Dec. entered 2/23/94 is vacated." *Id.*

*The Notice of Deficiency*

The Internal Revenue Code (the "IRC" or the "Code") provides a one-year period of limitations after a Tax Court judgment becomes final in which the IRS may assess the taxpayer for a deficiency. 26 U.S.C. § 6229(d). On July 3, 1995—within one year after the second Tax Court decision became final, but more than one year after the first Tax Court decision became final—the IRS issued a notice of deficiency to the Carrolls for the tax year 1982. The notice asserted deficiencies for negligence, tax motivated interest, and valuation overstatement penalties under sections 6653(a) and 6659 of the IRC, 26 U.S.C. §§ 6653(a) & 6659. *Carroll II,* 2000 WL 1819419, at *2, 2000 U.S. Dist. LEXIS 17582, at *4.

On June 4, 1996, the Carrolls filed a claim for a refund of the assessed penalties, asserting that the notice of deficiency was untimely. In the preceding week, they had paid $20,000 of the penalties assessed, and, within the preceding nine months, they had paid more than $130,000 in other taxes and interest, also with respect to the year 1982. *Carroll III,* 198 F.Supp.2d at 337.[6]

---

**6.** Part V of the Discussion, *infra,* contains additional factual details with respect to payment and claims for refund that are pertinent

### Proceedings in the District Court

On September 11, 1998, the Carrolls brought suit in the United States District Court for the Eastern District of New York " 'for recovery of federal income tax, penalties and additions to tax erroneously and illegally assessed and collected from plaintiffs by defendant for the calendar year 1982.' " *Carroll II*, 2000 WL 1819419, at *2, 2000 U.S. Dist. LEXIS 17582, at *5 (quoting Compl. ¶ 1). The complaint sought judgment in the amount of $218,305.48, plus interest, costs, and attorney's fees. The Carrolls challenged various aspects of the Tax Court decision. Most important for purposes of this appeal is the Carrolls' claim with respect to penalties and related interest totaling $81,391.95,[7] which were paid in response to the IRS's July 3, 1995, notice of deficiency—i.e., the notice that the Carrolls argued was untimely. *Id.*

In an October 19, 1999, Memorandum and Order, the district court (Denis R. Hurley, *Judge* ) denied a motion filed by the Carrolls for partial summary judgment regarding the July 3, 1995, notice of deficiency. *Carroll I*, 1999 WL 1090814, at *1, 1999 U.S. Dist. LEXIS 17999, at *1. In *Carroll I*, the court agreed with the IRS that, because the first Tax Court decision was not dated, it was never "rendered" within the meaning of section 7459(c), and therefore could never have become final and begun the running of the period of limitations for the IRS to issue a notice of deficiency. 1999 WL 1090814, at *4, 1999 U.S. Dist. LEXIS 17999, at *11. The court therefore concluded that the notice was timely and denied the Carrolls' motion for partial summary judgment. *Id.*

The Carrolls moved for reconsideration and, on October 23, 2000, the district court granted their motion for partial summary judgment. *Carroll II*. The court held that, pursuant to 26 U.S.C. §§ 7481(a)(1) and 7483, the Tax Court's first decision became final ninety days after it was entered, on May 24, 1994, and that once it did, the Tax Court had no jurisdiction to vacate that decision. *Carroll II*, 2000 WL 1819419, at *8, 2000 U.S. Dist. LEXIS 17582, at *24–*25. The July 3, 1995, notice of deficiency was therefore time-barred under the one-year limitation period of section 6229(d). *Carroll II*, 2000 WL 1819419, at *5, 2000 U.S. Dist. LEXIS 17582, at *15.

The IRS then moved for reconsideration, arguing, *inter alia*, that section 6511(b)(2)(B) of the IRC, 26 U.S.C. § 6511(b)(2)(B), limits the Carrolls' refund of contested penalties to the portion of the penalties that the Carrolls paid in the two years immediately preceding their filing of a claim for a refund of those penalties. In a Memorandum Opinion and Order dated September 13, 2001, the district court agreed with the IRS that the refund to which the Carrolls were entitled was limited to $20,000. *Carroll III*, 198 F.Supp.2d at 349.

In a judgment dated February 23, 2002, the district court awarded the Carrolls $20,000 plus statutory interest with respect to the penalties; $2,248.21 plus statutory interest for income averaging in 1982; and $7,329.27 plus statutory interest as a pro rata reduction of the assessed additions for tax-motivated interest.

The IRS appeals; the Carrolls cross-appeal.

---

only to the question of how much of a refund the Carrolls may be awarded.

**7.** Although the complaint sought a penalty reimbursement of $81,079.16, *Carroll II*, 2000 WL 1819419, at *2, 2000 U.S. Dist. LEXIS 17582, at *4–*5, it is undisputed that the Carrolls actually paid $81,391.95, including interest, in response to the penalty assessment, *Carroll III*, 198 F.Supp.2d at 344.

## DISCUSSION

### I. Standard of Review

We review the district court's grant of summary judgment *de novo.* *See Steel Partners II, L.P. v. Bell Indus., Inc.,* 315 F.3d 120, 123 (2d Cir.2002). "Summary judgment is appropriate only where, examining the evidence in the light most favorable to the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citations, internal quotation marks, and alterations omitted); *see also* Fed.R.Civ.P. 56(c). Our review under these standards is facilitated where, as here, the facts are not in dispute. *Cf. Steel Partners II,* 315 F.3d at 122–23.

### II. Principal Applicable Statutory Provisions

The principal statutory provisions, the interplay among which is at the heart of the appeal, are the following sections of Title 26 of the United States Code:

§ 6229. Period of limitations for making assessments

(a) General rule.—Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).

. . .

(d) Suspension when Secretary makes administrative adjustment.—If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended—

(1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and

(2) for 1 year thereafter.

\*       \*       \*       \*       \*       \*

§ 7459. Reports and decisions

. . .

(c) Date of decision.—A decision of the Tax Court (except a decision dismissing a proceeding for lack of jurisdiction) shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the Tax Court or, in the case of a declaratory judgment proceeding under part IV of this subchapter or under section 7428 or in the case of an action brought under section 6226, 6228(a), 6234(c), 6247, or 6252 the date of the court's order entering the decision. . . .

\*       \*       \*       \*       \*       \*

§ 7481. Date when Tax Court decision becomes final

(a) Reviewable decisions.—Except as provided [in subsections not relevant to this appeal], the decision of the Tax Court shall become final—

(1) Timely notice of appeal not filed.—Upon the expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time . . . .

\*       \*       \*       \*       \*       \*

§ 7483. Notice of appeal

Review of a decision of the Tax Court shall be obtained by filing a notice of appeal with the clerk of the Tax Court within 90 days after the decision of the Tax Court is entered. . . .

## III. Whether the Notice of Deficiency Was Timely

The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324 (codified as amended in scattered sections of 26 U.S.C.), establishes uniform procedures for taxation of partnerships. TEFRA requires, among other things, that the tax treatment of "partnership items"—"item[s] required to be taken into account for the partnership's taxable year"—must be determined at the partnership level. 26 U.S.C. § 6231(a)(3). As tax matters partner for the Stevens partnership, acting for the partnership, Sam Winer entered into a settlement with the IRS for the final adjustment of the taxes related to Stevens. After Winer's settlement was reduced to judgment by the Tax Court, a partnership-level appeal to that judgment had to be brought in Tax Court within ninety days; if the partnership did not appeal, the decision would become final upon the expiration of the ninety-day period. *Id.* §§ 7481(a)(1), 7483. No such appeal was taken. The judgment then became final, and no individual Stevens partner could thereafter contest the taxes and interest determined in that partnership-level proceeding. *See Monti v.*

*United States,* 223 F.3d 76, 79 (2d Cir. 2000).[8]

Unlike taxes and related interest, penalties[9] are determined on an individual partner level. The IRS asserts such a claim by sending individualized notices of deficiency to the partners whom the IRS contends are subject to penalties. 26 U.S.C. § 6212; *Chimblo v. Comm'r,* 177 F.3d 119, 121 (2d Cir.1999), *cert. denied,* 528 U.S. 1154, 120 S.Ct. 1159, 145 L.Ed.2d 1071 (2000). The IRS must issue any notices of deficiency within one year of the date upon which the partnership-level judgment becomes final. *See* 26 U.S.C. § 6229(d). An individual partner may then challenge his or her notice of deficiency by paying the assessment and bringing suit for a refund in district court, or, if the partner does not first pay the assessment, by seeking relief in Tax Court. *See Flora v. United States,* 357 U.S. 63, 74–75, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958).

As we have noted, the Tax Court's first decision in this matter was signed, served on the parties, and stamped "SERVED FEB 23, 1994," but no date was printed after the word "Entered:" following the chief judge's signature at the foot of the decision. The chief judge therefore issued a second decision on June 6, 1994, after the first decision (if it was valid and effective) became final. The second decision attributed the omission of the "requisite 'Entered' date" on the first decision to a "clerical error," vacated and set aside the first decision, and repeated the first decision *in*

---

8. Although 26 U.S.C. § 6665(a)(2) provides that the term "tax" in the IRC "shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by [Chapter 28 of the IRC]," as we discuss later, *infra* Part V, for the purposes of clarity in this opinion we do not use the word "tax" to include "penalties," unless we expressly so indicate.

9. Individually assessed penalties are called "affected items" because, although they must be determined at the partner level, they are affected by partnership items. 26 U.S.C. § 6231(a)(5). For example, a partner may be liable for penalties pursuant to section 6653 if his underpayment of tax is due in part to negligence. Thus, penalties must be determined at the partner level, rather than the partnership level. *See id.* § 6230(a)(2)(A)(i).

*haec verba*, except that the date of service was June 6, 1994, and the date line at the foot of the document, marked "Entered:", was completed. *Carroll II*, 2000 WL 1819419, at *2, 2000 U.S. Dist. LEXIS 17582, at *3–*4.

Because there was no appeal from the first decision, it is undisputed that, if that decision was effective despite the missing date, then it became final pursuant to sections 7481 and 7483 ninety days after that date—on May 24, 1994—and the IRS's time to issue a notice of deficiency to the individual Stevens partners, including the Carrolls, under section 6229(d) expired one year later—on May 24, 1995. The notice of deficiency was not in fact issued until July 3, 1995, long after that limitations period had ended. But if the first decision was ineffective because of the absence of an entry date, and the second decision which had an entry date of June 6 was the effective one, then the time for the IRS to issue the deficiency notice did not expire until early September 1995, and the IRS's July 3 notice of deficiency to the Carrolls was timely.

Section 7481 of the Code is entitled "Date when Tax Court decision becomes final" and provides in relevant part that "the decision of the Tax Court shall become final ... [u]pon the expiration of the time allowed for filing a notice of appeal." 26 U.S.C. § 7481(a). Section 7483 limits the time in which to file for review of a Tax Court decision to "90 days after the decision of the Tax Court is entered." *Id.* § 7483.

■ The Carrolls argue that the first decision was "entered" under section 7483 when, on February 23, 1994, having been signed, it was served and entered into the court's docket, and that it therefore became final ninety days after that—on May 24, 1994. Agreeing with the district court, they assert that the Tax Court had no authority under these circumstances to vacate the first decision once it became final, *see Carroll II*, 2000 WL 1819419, at *8, 2000 U.S. Dist. LEXIS 17582, at *24–*25 (citing cases), and that, even if the Tax Court could vacate its first decision, then its second decision, by merely correcting a clerical error, could not restart the limitations period for the issuance of the notice of deficiency. *Carroll III*, 198 F.Supp.2d at 342–43 & n. 4 (citing *Lieberman v. Gulf Oil Corp.*, 315 F.2d 403, 404 (2d Cir.), *cert. denied*, 375 U.S. 823, 84 S.Ct. 62, 11 L.Ed.2d 56 (1963)). We agree.

The IRS does not contest the meaning of sections 7481(a) and 7483. It argues instead that 26 U.S.C. § 7459(c) establishes a necessary additional step before a decision becomes final in an action under section 6226, the type of action that resulted in the first and second decisions. The crucial statutory language reads:

> Date of decision.—A decision of the Tax Court ... shall be held to be *rendered* upon the date that an order specifying the amount of the deficiency is entered in the records of the Tax Court or, in the case of a declaratory judgment proceeding ... or in the case of an action brought under *section 6226*, 6228(a), 6234(c), 6247, or 6252 *the date of the court's order entering the decision.*

26 U.S.C. § 7459(c) (emphasis added). The IRS argues that this provision distinguishes between (1) the generally applicable date of rendering for deficiency judgments brought in Tax Court; and (2) the date of entry "in the case of ... action[s] brought under section 6226," *id.* § 7459(c), such as the first and second Tax Court decisions. For the first group of judgments, the decision is rendered on the "date that an order specifying the amount of the deficiency is entered in the records of the Tax Court." *Id.* For the second group, including the decisions in this case,

the decision is rendered on "the date of the court's order entering the decision." *Id.* The IRS argues that this variation in language is important in light of the canon of statutory interpretation that urges against treating any words as superfluous. *See, e.g., Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985).

The IRS's argument proceeds as follows: Because section 7459(c) uses different language with respect to dating the first group of judgments from that used for the second group (which includes the judgments at issue in this case), the language variation must be meaningful. In contrast to the (group 1) phrase "the date that an order ... is entered in the records," the (group 2) phrase "the date of the court's order entering the decision" means the date printed on the "Entered:" line of the decision. Since a section 6226 decision is within the second group, if it does not have a date on its "Entered:" line, then it has not been rendered. Since it has not been rendered, it has not been validly entered. Thus, the first Tax Court decision, having no date on the "Entered:" line, was not rendered; having not been rendered, it was not entered; having not been entered, it was never "final"; and any time limitation with respect to it therefore never began to run. The second

decision, by contrast, had a date on the "Entered:" line; was rendered and thus validly "entered"; became final ninety days after its entry; and began the running of the applicable limitations periods on June 6, 1994. There were then ninety days during which an appeal could be brought before it became final, and one year thereafter during which the IRS could issue deficiency notices to the Carrolls and other Stevens partners. The IRS's argument has the support of the other Circuit to consider this claim by a former Stevens partner. *See Conway v. United States,* 50 Fed. Cl. 273 (2001)("*Conway I*"), *aff'd,* 326 F.3d 1268 (Fed.Cir.2003)("*Conway II*"). We nonetheless disagree.

Section 7459(c) does not say that the decision of the Tax Court in cases such as this one is rendered on "the date *on* the court's order entering the decision," it says that the decision is rendered on "the date *of* the court's order entering the decision." To be sure, "the date *on* the court's order entering the decision" might be construed to be the date on the "Entered:" line, and there was none on the first decision. But "the date *of* the court's order entering the decision," using the plain import of the term, could have been no later than the date on which the decision was signed by the chief judge, docketed, and served on the parties. It is undisputed that that date was February 23.[10]

---

**10.** The IRS's interpretation of section 7459(c) to the effect that section 6226 decisions are "rendered" when the effective date is written on them does not comport with common sense or any meaning of the term of which we are aware. While expressing doubts as to whether the terms "rendering" and "entering" are used with "technical accuracy" in the statutes governing federal appeals, the Fifth Circuit offered the following observations: "Strictly speaking, a judgment is rendered when finally published by the judge orally or in writing according to the practice of the court, and is entered when spread by the clerk upon the record or noted and filed

among the papers of the court, according to its practice." *In re Hurley Mercantile Co.,* 56 F.2d 1023, 1024 (5th Cir.1932), *cert. denied,* 286 U.S. 555, 52 S.Ct. 580, 76 L.Ed. 1290 (1932); *see also* Black's Law Dictionary 1298 (7th ed.1999) (defining "render" as "([o]f a judge) to deliver formally"). The moment of rendering is a moment of formal pronouncement. Thus, under section 7459(c), the "date of the court's order entering the decision" might be the date that the judge signed the order or issued the order, or the date that the order was docketed, or perhaps in theory the date (if ever) that the court delivered the order orally, but it cannot be the date written

We do not doubt that the difference between the language in the first and second clauses of section 7459 has meaning. There may well be circumstances in which "the date that an order specifying the amount of the deficiency is entered in the records of the Tax Court" differs from "the date of the court's order entering the decision," and that the latter, not the former, applies to decisions under section 6226 such as the ones now before us. The notion, however, that the "the date of the court's order entering [a] decision," depends not on its signing, docketing, or service, but on the completion of the sub-administrative task of stamping the date at the bottom of the decision seems to us to border on the frivolous.

The IRS's argument that the first Tax Court decision was not validly entered, because not validly rendered under section 7459(c), therefore fails. The first Tax Court decision became final ninety days after February 23, 1994. Once the first decision became a valid final decision, the Tax Court had no jurisdiction to vacate it under these circumstances.[11] *See, e.g., Lasky v. Comm'r*, 235 F.2d 97, 98–100 (9th Cir.1956) (holding, at a time when the Tax Court was an agency rather than a court, that it lacked the power to vacate its own decisions), *aff'd per curiam*, 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957); *Abatti v. Comm'r*, 859 F.2d 115, 117–18 (9th Cir. 1988) (holding that, although now an Article I court, the Tax Court lacks the equitable power to vacate its own decisions except under limited circumstances such as fraud on the court); *see also Vibro Mfg. Co. v. Comm'r*, 312 F.2d 253, 254 (2d Cir. 1963) (per curiam) (observing that the failure to file a petition for redetermination

within 90 days of the mailing of the notice of deficiency is a "jurisdictional defect" and that the 90–day period to file an appeal under section 7483 is an "absolute" restriction, and holding that failure to comply with the latter deprives this Court of jurisdiction); *Drobny v. Comm'r*, 113 F.3d 670, 677–79 (7th Cir.) (explaining that the Tax Court may vacate a valid final decision "only in certain narrowly circumscribed situations" (internal quotation marks omitted)), *cert. denied*, 522 U.S. 916, 118 S.Ct. 303, 139 L.Ed.2d 233 (1997); *cf. Senate Realty Corp. v. Comm'r*, 511 F.2d 929, 931 n. 1 (2d Cir.1975) (noting that the Tax Court may vacate a valid final decision on the grounds of fraud upon the Tax Court). The second Tax Court decision was therefore a nullity, at least for purposes of calculating the time in which to file an appeal or a notice of deficiency, and the limitations period expired on May 24, 1995, long before the IRS issued the notice of deficiency.

■ Moreover, even if the Tax Court did have jurisdiction to vacate and then reenter its decision, we do not think that that act would restart the statute of limitations. The Tax Court stated that it was correcting "an inadvertent clerical error" and then repeated the first Tax Court decision *in haec verba*, with the "clerical error"— the omission of the "Entered:" date—corrected. Because the court merely "reentered or revised [the first decision] in an immaterial way," the second decision "does not toll the time within which review must be sought." *FTC v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211, 73 S.Ct. 245, 97 L.Ed. 245 (1952); *cf. Lieberman v. Gulf Oil Corp.*, 315 F.2d 403, 404

at the foot of the document or the date (if ever) on which that writing took place.

**11.** The IRS acknowledges that, if the first Tax Court decision was valid, then the Tax Court

lacked jurisdiction to vacate it after the passing of ninety days without an appeal made it final. Appellant's Br. at 25.

(2d Cir.) (holding that the entry of an order correcting a technical mistake in a judgment pursuant to Fed.R.Civ.P. 60(a) did not restart the time for appeal), *cert. denied,* 375 U.S. 823, 84 S.Ct. 62, 11 L.Ed.2d 56 (1963).

The Court of Appeals for the Federal Circuit, in *Conway II,* 326 F.3d at 1276–77, decided that such a conclusion was inconsistent with the "practical" approach of *Honeywell* and its progeny. Again we disagree. In *Honeywell,* the Supreme Court considered the timeliness of a petition for certiorari filed within the ninety-day filing period after the Seventh Circuit had issued a "final decree" that did not touch on the substance of an earlier decision which formed the basis for the petition for certiorari, but outside the ninety-day filing period after the Seventh Circuit had issued a certified copy of the earlier judgment. 344 U.S. at 208–10, 73 S.Ct. 245. The Supreme Court held that the petition was untimely because the final decree did not alter the substance of the earlier decision, so it did not restart the limitations period. The Court observed:

> While it may be true that the Court of Appeals had the power to supersede the [earlier] judgment ... with a new one, it is also true, as that court itself has recognized, that the time within which a losing party must seek review cannot be enlarged just because the lower court in its discretion thinks it should be enlarged. Thus, the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew.

*Id.* at 211–12, 73 S.Ct. 245 (footnotes containing citations omitted). The Court continued: "The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." *Id.* at 212, 73 S.Ct. 245. In this case, the Tax Court's second decision did not alter, let alone disturb or revise, the legal rights and obligations of the parties; the second decision merely restated the first while correcting a clerical error.

The IRS's argument might prevail if the first decision was a nullity and therefore gave rise to no legal rights or obligations; then, the second decision might be viewed as disturbing or revising an ineffective first decision. As we have already discussed, however, we think that a Tax Court order and decision that is signed by the judge, served and docketed, and completed except for the "Entered:" date, is "rendered" and is effective. The absence of the date at the foot of the document does not render it a nullity.[12]

---

**12.** This case is in no way similar to *Scofield v. NLRB,* 394 U.S. 423, 427, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969), in which the parties received no notice that judgment was entered. It also differs significantly from *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227 (3d Cir.1991), in which the initial order contained inconsistent paragraphs variously certifying the order for interlocutory appeal and as a final judgment, thereby making it "difficult for defendant's counsel to determine how the order should be appealed." *Id.* at 1231 n. 2. While we agree with the Federal Circuit that *"Honeywell* has been applied to extend the time of appeal when there was an ambiguity as to the legal effect of a court's order," *Conway II,* 326 F.3d at 1276, we do not think that the failure to stamp the date created any ambiguity as to the legal effect of the first Tax Court decision, or even as to its date, since it was clearly marked, "SERVED FEB 23 1994."

In the final analysis, any consideration of *Honeywell* "practicality" must work against the IRS. While we understand the IRS's desire to construe the first decision of the Tax Court to be without effect so as to render timely its notice of deficiency, there is nothing practical about the notion that a decision otherwise final but, as a result of a clerical error, missing the "Entered:" date is a nullity. Were that the case, the limitations periods for both taxpayer and the IRS with respect to such a decision would run indefinitely until either someone caught the error or some other limitations period, if any, took effect. We can see nothing "practical" about creating that sort of administrative limbo.

We therefore conclude that the first Tax Court decision was validly rendered and entered no later than February 23, 1994; the one-year period in which the IRS could issue a notice of deficiency began to run ninety days later, when the decision became final; the second Tax Court decision did not restart the limitations clock; and the notice of deficiency issued by the IRS on July 3, 1995, was therefore untimely.

## IV. Whether the Carrolls' Suit Is Barred Under the Doctrine of Res Judicata

■ The IRS argues that the Carrolls' claim of untimeliness is barred by the doctrine of res judicata because all issues related to the Tax Court judgment were resolved in the Tax Court's second decision or should have been resolved through an appeal from it. The IRS contends that the second Tax Court decision resolved the questions of whether the first decision was valid under section 7459(c) and therefore of when the one-year limitations period for the notices of deficiency started to run. According to the IRS, the second decision held that the first decision was a legal nullity because otherwise the Tax Court

would have lacked jurisdiction to vacate it more than ninety days later. As the second decision was a partnership-level determination, the IRS asserts that these issues should have been contested at the partnership level through an appeal from the Tax Court's second decision, because each partner who does not opt out " 'is bound by the results of' the partnership proceeding." Appellant's Br. at 22 (quoting *Monti v. United States*, 223 F.3d 76, 79 (2d Cir. 2000)).

The district court rejected this argument. First, the court reasoned that the Carrolls' action is not a collateral attack on the jurisdiction of the Tax Court, but rather "an attack on the IRS's interpretation of the legal effect of the June 1994 Decision as restarting the clock on the time period within which the IRS was required to serve its notice of deficiency upon Plaintiffs." *Carroll III*, 198 F.Supp.2d at 342 (citing *Banque Nationale De Paris v. 1567 Broadway Ownership Assocs.*, 248 A.D.2d 154, 155, 669 N.Y.S.2d 568, 569 (1st Dep't 1998)). Second, the court concluded that, even if the Tax Court had jurisdiction to enter the second decision, that second decision did not deprive the first decision of its finality or restart the one-year limitations period for the notice of deficiency. *Id.* at 342–43. Finally, the district court noted that "the adoption of the IRS's position on this point would require of these Plaintiffs remarkable prescience [because the] Plaintiffs were not aggrieved by the June 1994 Decision until July 3, 1995 (the date the IRS relied upon that decision to issue, in untimely fashion, a notice of deficiency)," *id.* at 343 n. 6, long after the Carrolls' right to appeal the Tax Court's decision had expired.

We agree with the district court. The Carrolls' suit is not a challenge to the Tax Court's second decision, but a challenge to the timeliness of the IRS's notice of defi-

ciency. The Carrolls' rights were affected by the actions of the IRS on July 3, 1995, when it issued the notice of deficiency, and not before. By the time the Carrolls received the notice, the ninety-day period for appealing the Tax Court decision had long since expired. Prior to that time, there was no certainty that the IRS would issue them a notice of deficiency, still less that the IRS would issue them an untimely one. In general terms,

> [u]nder the doctrine of *res judicata*, or claim preclusion, a final adjudication on the merits of an action precludes the parties or their privies from relitigating issues that *were or could have been raised in that action*. Said differently, upon a final judgment on the merits, parties to a suit are barred as to every matter that was offered and received to sustain or defeat a cause of action, as well as to any other matter that the parties had a full and fair opportunity to offer for that purpose.

*Bank of India v. Trendi Sportswear, Inc.,* 239 F.3d 428, 439 (2d Cir.2000) (citations, quotation marks, and alterations omitted; second emphasis added). Neither the validity of the first decision nor the running of the limitations period "were or could have been raised" in the Tax Court or on appeal from it. We therefore conclude that the Carrolls' suit is not barred by the doctrine of res judicata.

■ In *Conway I,* the Court of Federal Claims rejected the IRS's argument that the taxpayer was barred by res judicata from bringing such a suit, 50 Fed.Cl. at 280, but concluded that principles of comity required deference to the validity of the Tax Court's second decision, *id.* at 281. That conclusion was based on the fact that the Stevens partners, by bringing an action against the IRS with respect to the timeliness of its notice of deficiency, are attacking the Tax Court's second decision collaterally, and principles of comity dictate against such collateral attacks on decisions of the Tax Court. But, as the *Conway I* court noted, a collateral bar does not apply to judgments issued without jurisdiction. 50 Fed.Cl. at 281 (citing *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 495–96, 53 S.Ct. 721, 77 L.Ed. 1331 (1933) ("[A collateral] attack can be successful only where and to the extent that it discloses a want of power as distinguished from error in the exertion of power that was possessed.")). Since the Tax Court lacked jurisdiction to issue the second decision, *see supra* Part III, principles of comity do not stay our hand.

Moreover, even if the Tax Court did have jurisdiction to enter the second decision, it was a non-substantive housekeeping document that did not restart the statutory limitations period. *See id.* Far from overriding the second decision contrary to principles of comity, then, we resolve this case in a manner consistent with both the first and second Tax Court decisions by holding that the first was effective no later than February 23, 1994, that the second cured a clerical error but did not restart the limitations period, and that the notice of deficiency was therefore untimely. The Carrolls' suit is not barred.

## V. The Amount of the Refund

In its second reconsideration of the case, the district court granted the Carrolls only $20,000 of the $81,391.95 penalty reimbursement that they sought in their motion for partial summary judgment. *Carroll III,* 198 F.Supp.2d at 348–49. The Carrolls cross-appeal from this decision.

### A. Additional Background

*Carroll III* recounts in detail the relevant forms and responses that passed between the IRS and the Carrolls. 198 F.Supp.2d at 337–41. We therefore supply

only those facts necessary to explain the background to our resolution of the cross-appeal.

The July 3, 1995, notice of deficiency assessed $59,043.27 in penalties: $51,357.27 for negligence and $7,686 for overvaluation. By the time the Carrolls paid the entirety of that assessment, however, interest had increased the total to $81,391.95.

On July 17, 1995, the Carrolls were also assessed Stevens-related taxes and interest totaling $131,626.54. This sum consisted of "partnership items"—i.e., items that had been determined in the partnership-level proceeding and that did not require an individualized notice of deficiency.

Through a Form 1040X and a Form 843, both dated May 29, 1996, the Carrolls sought to amend their 1982 joint tax return; to request a partial refund of $32,138 of the more than $130,000 of Stevens-related taxes and interest for 1982 that they had paid in full in the preceding nine months; and to request a refund of the assessed penalties for 1982. *Carroll II*, 2000 WL 1819419, at *2, 2000 U.S. Dist. LEXIS 17582, at *5; *Carroll III*, 198 F.Supp.2d at 337–38. On June 3, 1996, the Carrolls paid $20,000 toward the penalties owed for 1982. *Id.* at 337. The Carrolls' forms were received by the IRS on June 4, 1996. *Id.* By the time the IRS received the Carrolls' claim for penalty reimbursement, then, they had paid only $20,000 of the contested penalties for 1982, but had paid more than $130,000 for taxes and interest for that year. *See id.*

After receiving a letter from the IRS dated September 13, 1996, which the Carrolls thought was a denial of their request for an abatement of the penalties covered by the notice of deficiency, the Carrolls paid the remainder of the penalties. Compl. ¶ 63; *see Carroll III*, 198 F.Supp.2d at 348. The Carrolls did not, at any time prior to their initiation of this lawsuit, file an amended Form 843 request for refund of those penalties to indicate the updated information that they had paid all of the penalties owed.

The district court decided that under 26 U.S.C. § 6511(b)(2)(B) the Carrolls can recover only $20,000—the amount of the contested penalties that they had paid before filing their May 29, 1996, Form 843—and not the remaining $61,391.95 in contested penalties that they paid since they filed that Form 843. *Carroll III*, 198 F.Supp.2d at 348–49.

*B. Analysis*

The so-called "look-back" rule of section 6511(b)(2)(B) provides, in relevant part, that "the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." The government argues that section 6511(b)(2)(B) permits a refund only of the contested penalties paid by the Carrolls within the two years preceding their claim for a refund of the 1982 penalties, which was received by the IRS on June 4, 1996. The government urges us to affirm the district court's decision to limit the Carrolls' recovery to $20,000 on this ground.[13]

---

**13.** The parties disagree about the grounds of the district court's holding on this point. The Carrolls urge us to read the district court's opinion as an improper application of the "prior claim rule" of 26 U.S.C. § 7422(a), whereas the government disavows the relevance of the prior-claim rule and construes the district court as holding in its favor on the basis of the look-back rule of 26 U.S.C. § 6511(b)(2)(B). Because the government argues only that recovery is limited to $20,000 under the look-back rule, we consider only the application of section 6511(b)(2)(B).

We decline to do so. There is nothing in the language of section 6511(b)(2)(B) that limits "the tax paid" to the particular penalties disputed in the claim, nor has the government cited any cases so interpreting it. On the contrary, the Code expressly defines "tax" to include penalties and interest. *See* 26 U.S.C. § 6665(a)(2) ("[A]ny reference in this title to 'tax' imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter."); *id.* § 6601(e)(1) ("Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax."). The "tax paid" therefore refers to the sum of taxes, penalties, and interest paid for the tax year in question. In the absence of textual, doctrinal, or policy argument to the contrary, we so interpret section 6511(b)(2)(B) in the context of the Carrolls' claim.

In the two years immediately preceding June 4, 1996, the Carrolls paid more than $130,000 in taxes and interest for the year 1982 and they paid $20,000 in related penalties. This amount of 1982 taxes, as defined in sections 6665(a)(2) and 6601(e)(1), substantially exceeds the sum of the penalty reimbursement, $81,391.95, that the Carrolls seek in this suit. We therefore conclude that the Carrolls are entitled to a full refund of the penalties paid in connection with the untimely notice of deficiency.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of partial summary judgment to the Carrolls on their claim for a refund of penalties from the year 1982 on the ground that the notice of deficiency was untimely. We vacate the district court's decision awarding the Carrolls only $20,000 of the penalties sought, and we remand to the district court for the entry of judgment awarding the Carrolls their full reimbursement.